[Civ. No. 23949.   Second Dist., Div. Two.   Oct. 23, 1959.]

ISAAK PEREPLETCHIKOFF, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Walter H. Young, Booth H. Bowers and Edward K. Brady for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Marcus E. Crahan, Jr., Deputy City Attorney, for Respondents.

ASHBURN, J.—This is an appeal from a judgment of the Superior Court of Los Angeles County denying a peremptory writ of mandate under section 1094.5 of the Code of Civil Procedure and affirming an order requiring demolition of appellant's commercial and hotel building located at the corner of East Fifth Street and San Julian Street in Los

Angeles, which order was issued by the Board of Building and Safety Commissioners of said city on July 17, 1958. The board's order unconditionally requires "that said building be vacated and demolished."

It rests not only upon findings of violation of the Los Angeles Municipal Code, but also upon the following: "3. The building by reason of materials of construction, obsolescence, dilapidated condition, deterioration, damage and electric wiring is in such condition as to be a fire cause and is so situated as to endanger life or other buildings or property in the vicinity and provide a ready fuel supply to augment the spread and intensity of fire arising from any cause. 4. The building is maintained in violation of specific requirements of the Los Angeles Building Code and State Health and Safety Code. 5. The building is unfit for human habitation or occupancy within the terms of the State Health and Safety Code."

The building was erected about 1883 and is a two-story wood structure. The second floor was designed and used as a hotel consisting of 21 rooms; the ground floor is occupied by a restaurant and bar and a secondhand store. On demand of the city's health department the second story was vacated on February 17, 1958, all entrances thereto were barricaded and it has remained in that condition at all times since said date. The building is situated in Fire District Number 1 and the building code requires that two-hour fire resistant outside walls be installed in new buildings.

█ The city has power, aside from the municipal code, to abate public nuisances. (Civ. Code, § 3494; Los Angeles City Charter, § 2, subds. (4), (6), 11 (a), (11) (n); 36 Cal. Jur.2d, § 79, p. 564; *Nerio* v. *Maestretti*, 154 Cal. 580 [98 P. 860]; *McQueen* v. *Phelan*, 4 Cal.App. 695, 697 [88 P. 1099]; *Eaton* v. *Klimm*, 217 Cal. 362, 372 [18 P.2d 678]; *City of Turlock* v. *Bristow*, 103 Cal.App. 750, 755 [284 P. 962]; *People* v. *Vasquez, infra*, 144 Cal.App.2d 575, 576-577 [301 P.2d 510].

Ordinance Number 100,677, amending certain portions of the municipal code, says in section 96.100, under the caption "Declaration. of Purpose": "It is the purpose of the provisions of this division to provide a just, equitable, and practicable method, *to be cumulative with and in addition to any other remedy available at law,* whereby buildings or structures which are dilapidated, unsafe, dangerous, insanitary, or are a menace to the life, limb, health, morals, property, safety and general welfare of the people of this City, or which tend to

constitute a fire hazard, may be required to be repaired, vacated or demolished.'' (Emphasis added.)

The proceeding before the Board of Building and Safety Commissioners was had pursuant to and in accordance with Ordinance Number 100,677. No claim of want of notice or of any unfairness in the hearing is advanced by appellant, whose counsel freely cross-examined all witnesses. Only one witness was produced by appellant, Mr. Ray Bennett, and his testimony related only to the matter of repairs made to the building over the years.

The board made seven findings, three of which are quoted above; the other four were directed at violations of the portion of the ordinance known as the building code.[1] The evidence amply sustains all of the seven findings. The support for the quoted paragraphs is summarized in the trial judge's written memorandum as follows: ''The evidence received in our case under oath pursuant to question and answer (except as to reports required by city ordinance, for which proper foundation was laid and as to which cross-examination took place at length) proved, without substantial contradiction, that as to the building under consideration there were hazards and deficiencies with respect to wiring, lath, plaster, brick, sash, doors, corridors, weight-bearing beams; also there was distortion, settling, lack of clearance; structural deficiencies existed; there were overloads, insufficient footings, plumbing deficiencies; there was vermin infestation, filth, a lack of reasonable toilet and washbowl facilities; there was insufficient ventilation, a lack of bracing, dry rot, etc.; there was a lack of hot water, there was insufficient heating, etc. It appears that the replacement cost would be nearly $40,000.00, and that recondition for normal occupancy would cost in excess of $30,000.00. The two-hour fire wall cost was not a large or

---

[1] ''1. The building is located in a congested area, is constructed of highly flammable materials, and is a fire hazard appreciably in excess of the average building in the same location and of buildings constructed in accordance with the minimum standards of Article 1, Chapter 9 of the Los Angeles Municipal Code.''

''2. The building has in nonsupporting parts less than 50% and in supporting parts less than 66% of the fire-resistive qualities or characteristics required by law or ordinance in the case of a newly constructed building of like area, height, and occupancy in the same location.''

''6. The building is nonconforming and is in need of repairs and alterations required by the Los Angeles Municipal Code in an amount exceeding 50% of the replacement cost.''

''7. The required repairs and alterations would amount to a substantial reconstruction of the building and the cost of such repairs and alterations would exceed 50% of the value of the buildings.''

sufficient percentage of this." The formal finding is: "The respondent Board acted independently and properly, reviewed the entire record, and applied correct standards in reaching its conclusion, based upon substantial evidence in light of the whole record, that petitioners said buildings located at 318-324 East Fifth Street, and 501-509 San Julian Street, Los Angeles, California, is a public nuisance, is unsafe, substandard, nonconforming, a fire hazard, and a menace to life, limb, property and the safety and welfare of the community, and that structure cannot be reasonably repaired; that it must be demolished."

This evidence and these findings would support an order of demolition of an existing public nuisance without reference to the ordinance. (See Health & Saf. Code, §§ 12510, 15024, 17821; *People* v. *Foerst,* 10 Cal.App.2d 274, 275 [51 P.2d 455]; *People* v. *United Capital Corp.,* 26 Cal.App.2d 297, 299 [79 P.2d 186]; *People* v. *Vasquez, supra,* 144 Cal.App. 2d 575, 576-577.) In the last cited case, at pages 577-578, it is said: "Although evidence was received without objection as to different respects in which the building violated building legislation and ordinances, the decision that the building is a public nuisance is not based on findings that it violates any such legislation or ordinances but on the ground that the defects of the building 'are dangerous to the public health and safety and are offensive to the senses and constitute an extreme fire hazard to said premises and all the surrounding property.' As the undisputed fire and health hazards sufficiently justify the decision, we need not consider whether retroactive application of certain legislation or ordinances to the required changes would be legal or not—also considering the extent of said required changes—or whether the finding that the building is offensive to the senses is sufficiently supported by the evidence."

However, in the case at bar the evidence and the findings of the board concerning violations of the ordinance are so intermeshed with facts relating to common law nuisance that we consider appellant's attack upon the constitutionality of the ordinance as applied to his property to be one requiring consideration. Specifically, the department's experts testified substantially to the effect that the two-hour fire-resistant outside walls would be essential to proper repair or restoration of the building.

Appellant's main contention is thus stated in his brief: "Appellant's remaining contention is that to order

demolition of a building because it is made of wood, and lacks two-hour fire-resistant walls, is arbitrary, unreasonable, a taking of private property without due process and without compensation, and not a proper exercise of the respondent's 'police power.' '' This is an attack upon section 91.1603(b) of the municipal code which says: ''*Nonconforming Buildings.* Alterations and repairs to a nonconforming building in a Fire District may be of the same type of construction as the existing building if the aggregate value of such repairs, in any one year, does not exceed 10 per cent of the replacement cost of the building.

''Alterations or repairs in excess of 10 per cent of the replacement cost of the building or structure may be made provided all of the repairs and the new construction conform to the materials and type of construction required for a new building of like area, height and occupancy in the same location.

''Whenever a nonconforming building or structure has been damaged, or is in need of repairs or alterations required by the Los Angeles Municipal Code in an amount exceeding 50 per cent of the replacement cost, the entire building or structure shall be made to conform to the Code or shall be demolished.''

It is to be noted, however, that the order for demolition of the building was not predicated solely upon the fact that ''it is made of wood, and lacks two-hour fire-resistant walls.'' Those things entered into the conclusion that the structure should be torn down but they were only a part of the general conditions which spelled nuisance. The statement of *Armistead* v. *City of Los Angeles*, 152 Cal.App.2d 319, 326 [313 P.2d 127], that ''the fact standing alone that a building within a fire district is of wooden construction will not justify an order of demolition by a city'' is therefore inapposite. ''Despite their usefulness under some conditions, wooden buildings, and even shingle roofs, can be declared to be nuisances within urban areas.'' (*City of Nokomis* v. *Sullivan*, 4 Ill.2d 417 [153 N.E.2d 48, 51].)

The record does not show affirmatively that the structure conformed to the building ordinance at the time of its erection in 1883, but the parties and the lower court have assumed that it did and we will proceed upon that basis. Essentially appellant's contention is that a building which conformed to 1883 standards can be tested by those criteria in 1958 and that no repairs can be required under modern ordinance stand-

ards if they are burdensome to the owner; that this would be a taking of his property without due process. The record shows that $17.76 was spent on repairs in 1951; nothing was spent during 1952 to 1956, inclusive, $433 in 1957 and $209.95 in 1958; the gross rental received during this period was $9,000 a year, which is about 30 per cent of the original purchase price of the building. Insistence upon a right to let a building deteriorate at this rate pushes the due process clause beyond the outermost limit.

In *Queenside Hills Realty Co.* v. *Saxl*, 328 U.S. 80, 83 [66 S.Ct. 850, 90 L.Ed. 1096], the court said: "[I]n no case does the owner of property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws." This principle was announced in the process of upholding the multiple dwelling law of New York "providing, inter alia, that lodging houses 'of non-fireproof construction existing prior to the enactment of this subdivision' should comply with certain new requirements. Among these was the installation of an automatic wet pipe sprinkler system." (P. 81.) Plaintiff alleged that his lodging house had a market value of $25,000 and the cost of complying with the new law would be $7,500, and the benefits to be obtained would be negligible, but this argument was rejected.

*Stoetzner* v. *City of Los Angeles,* 170 Cal.App.2d 394 [338 P.2d 971]: "No argument or citation of authorities is needed for the proposition that a building erected for use as, and which is used as a hotel and which has so deteriorated as to be unsafe for human habitation, is a public nuisance or for the proposition that such a nuisance may be ordered abated by the demolition of the offending structure if the nuisance which it creates cannot be otherwise abated."

*Adamec* v. *Post,* 273 N.Y. 250 [7 N.E.2d 120, 109 A.L.R. 1110], deals with New York's multiple dwelling law as amended in 1935, which provides that "buildings used as multiple dwellings, though erected prior to 1901 in accordance with the requirements of the laws of the State which were then in force, must now comply with new requirements and higher standards enacted by the Legislature, for the protection of the safety and health of those who may live in these houses and, indirectly, of the people of the State." (P. 121 [7 N.E.2d].) In upholding the constitutionality of the law the court said, at page 123 [7 N.E.2d]: "The plaintiff in his complaint set forth sixteen 'changes, additions, elimina-

tions and alterations' in his building which will be required to meet the new standards prescribed in the statute as amended. These requirements are not challenged on the ground that they are not calculated to promote in some degree the public health, safety, and welfare. They are challenged solely on the ground that the cost of conforming to them would be unreasonable.'' At 124 [7 N.E.2d] : ''Certainly the proportion of cost of the alteration to the assessed or even the market value of the old law tenement can be no criterion of whether the Legislature has acted reasonably in requiring the alteration. The value of a tenement house decreases as year by year it becomes more antiquated, less suited to its purpose and departs further from the reasonable standards prescribed by the State for such buildings; yet the same reasons which cause such decline in value may present most cogent argument that the Legislature as a condition of the continued use of these old buildings as dwellings should require alterations which will make them reasonably fit for use as dwellings according to modern standards of health, safety and decency and thus prevent them from becoming a source of danger to the community. . . . Because the State has tolerated slum dwellings in the past, it is not precluded from taking appropriate steps to end them in the future. When a building used as a dwelling house is unfit for that use and a source of danger to the community, the Legislature in order to promote the general welfare may require its alteration or require that its use for a purpose which injures the public be discontinued; and, subject to reasonable limitation, the Legislature may determine what alterations should be required and what conditions may constitute a menace to the public welfare and call for remedy.'' (See the annotation of this case in 109 A.L.R. 1117.)

*City of Seattle* v. *Hinckley,* 40 Wash. 468 [82 P. 747, 748-749, 2 L.R.A. N.S. 398] : ''And there is no merit in the contention that the respondent had any inherent or vested right because he had complied with the law existing at the time he built. There is no such thing as an inherent or vested right to imperil the health or impair the safety of the community. But, to be protected against such impairment or imperilment, is the universally recognized right of the community in all civilized governments; a protection which the government not only has a right to vouchsafe to the citizens, but which it is its duty to extend in the exercise of its police power. When the subject of legislation is a proper subject of such

exercise, as in this case it undoubtedly is, private rights are always held subservient to the public weal, and the Legislature must be the judge of the propriety or extent of the remedy. . . . It would be a sad commentary on the law, if municipalities were powerless to compel the adoption of the best methods for protecting life in such cases simply because the confessedly faulty method in use was the method provided by law at the time of its construction. The changing of fire escapes is only an incident in the expense of the construction or repair of a building." (See also *City of Houston* v. *Lurie*, 148 Tex. 391 [224 S.W.2d 871, 877, 14 A.L.R.2d 61]; and anno. in 14 A.L.R.2d 73.)

California law is in harmony with the foregoing cases. *Ex parte Fiske*, 72 Cal. 125 [13 P. 310], upheld a San Francisco ordinance which provided: " 'No wooden building within the fire limits shall be altered, changed, or repaired without permission in writing signed by a majority of the firewardens, approved by a majority of the committee on fire department and the mayor, which permit shall fully express the alterations, changes, or repairs allowed, a copy of which shall be filed by the grantee,' etc." (P. 126.) At page 127 the court said: "And it has become the settled law that a state,—and under our system a municipality of the state,—in order to protect the property of all its citizens from the ravages of fire, may establish fire limits, and regulate or prevent the use of wooden buildings within such limits; and that, although this may disturb the enjoyment of the rights of an individual, he is, in contemplation of law, compensated by sharing the general benefits derived from it." Consonant with these principles are *Rau* v. *Redwood City Woman's Club*, 111 Cal.App. 2d 546, 552 [245 P.2d 12]; *Baird* v. *Bradley*, 109 Cal.App.2d 365, 367-368 [240 P.2d 1016]; *Sullivan* v. *City of Los Angeles*, 116 Cal.App.2d 807, 810 [254 P.2d 590]; *Ex parte Hadacheck*, 165 Cal. 416, 421 [132 P. 584, L.R.A. 1916B 1248], affirmed in *Hadacheck* v. *Sebastian*, 239 U.S. 394, 410 [36 S.Ct. 143, 60 L.Ed. 348]; *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 415 [218 P.2d 17]; *Miller* v. *Board of Public Works*, 195 Cal. 477, 488 [234 P. 381, 38 A.L.R. 1479].

■ All authorities agree that laws which require that existing buildings be brought up to newly enacted standards must be reasonable in their impact upon a given property. (See *Adamec* v. *Post, supra*, 7 N.E.2d 120, 122, and anno. in 109 A.L.R. 1117.) ■ Appellant argues that this standard

of reasonableness has not been met at bar. Counsel inveigh against section 91.1603(b) of the ordinance, which is quoted *supra.*

Under its provisions small items of repair may be made of the same materials as the existing structure; those which cost more than 10 per cent of the replacement cost of the building must conform to the materials and type of construction required for a new building in the area. When repairs have been neglected to the extent that the nonconforming building needs repairs or alterations costing more than 50 per cent of the replacement cost the entire building must be made to conform to the code or be demolished.

Cases above cited establish the propriety of requiring repairs of a preordinance structure to conform to the new standard. That is but a reasonable exercise of the police power. The provision requiring the entire building to be made to conform or be demolished when its deterioration exceeds 50 per cent of the replacement cost, has been upheld as a reasonable exercise of the police power in cases where such a provision has been challenged. See *Davison* v. *City of Walla Walla,* 52 Wash. 453 [100 P. 981, 982, 132 Am.St.Rep. 983, 21 L.R.A. N.S. 454] ; *De Von* v. *Town of Oroville,* 120 Wash. 317 [207 P. 231, 233] ; *Behrend* v. *Town of Pe Ell,* 136 Wash. 364 [240 P. 12, 14] ; *Myers* v. *State,* 4 N.J.Misc. 251 [132 A. 335] ; *Zalk & Josephs Realty Co.* v. *Stuyvesant Ins. Co.,* 191 Minn. 60 [253 N.W. 8, 11] ; *Bettey* v. *City of Sidney,* 79 Mont. 314 [257 P. 1007, 1009-1010, 56 A.L.R. 872] ; *Citizens Ins. Co.* v. *Barnes,* 98 Fla. 933 [124 So. 722, 723] ; *Soderfelt* v. *City of Drayton,* 79 N.D. 742 [59 N.W.2d 502, 508] ; *Russell* v. *City of Fargo,* 28 N.D. 300 [148 N.W. 610, 611, 615].

The Soderfelt case relies upon *Russell* v. *City of Fargo,* wherein it is said at page 615 [148 N.W.] : ''The constitutionality of this 50 per cent test ordinance is questioned, but we are satisfied that, for the purpose for which it was intended, it is a valid enactment. The authorities indicate that there must be some method of determining whether changes made in an old structure are sufficient to constitute a rebuilding or the erection of a new structure, and such provisions are based on the supposition that there is a point somewhere between a perfect or safe building and one which cannot be made safe as to fire, etc., without complete demolition, and a rebuilding. Both the Legislature and the city council have fixed that point at 50 per cent deterioration above the foundation, evidently

taking the view that, where it has deteriorated more than half in value, that is, has so deteriorated that, on a reconstruction, the building will be more new than old, it is the erection of a new building, rather than repairing of an old one *(Mt. Vernon National Bank* v. *Sarlls, supra* [129 Ind. 201 (28 N.E. 434, 13 L.R.A. 481, 28 Am.St.Rep. 185)]), but an arbitrary prohibition is invalid. We cannot pronounce this an unreasonable test.''

The generality of this language is qualified by the following, also found on page 615 [148 N.W.]: ''When the law gives city officials the power to remove a building erected within the fire limits in violation of the statute or ordinance, the power to compel the removal of the building grows solely from the fact that its erection was in violation of the ordinance, and not because it is a nuisance, and the power to abate nuisances does not warrant destruction of valuable property, which was lawfully erected, or anything which was erected by lawful authority, and the power to do so, when given by the Legislature is held to be inoperative and void, *unless the thing is in fact a nuisance,* or was created or erected after the passage of the ordinance, and in defiance of it. This is the distinction between the rights of the city regarding buildings erected before the fire limits were established and those subsequently built.'' (Emphasis added.) (To same effect, see *Bettey* v. *City of Sidney* (Mont.), *supra,* 257 P. 1007, 1009-1010; *Hill Military Academy* v. *City of Portland,* 152 Ore. 272 [53 P.2d 55, 60]; 62 C.J.S. § 225(b), p. 412.) This appears to be a valid distinction, one applicable to the ordinance now under consideration. Although the code declares in sections 91.0101(b) and 91.4901(a) that its requirements apply to existing buildings as well as those subsequently erected, the reasoning of the Russell case would indicate that application of the 50 per cent provision must be confined to buildings constructed after enactment of the ordinance; that, for constitutional reasons, demolition of a then existing building can be required only when it has reached the status of a nuisance in fact. That seems to be a sound conclusion, but the issue need not be determined in this case for it clearly appears that the instant hotel building is a nuisance in fact and hence it is immaterial whether the 50 per cent provision of the ordinance declares it to be so, or not.

Moreover, appellant is in no position to challenge this 50 per cent provision for he has neglected his building until it

has become a common law nuisance and the cost of necessary alterations or repairs far exceeds 50 per cent of its replacement cost. As above shown, only $660.71 was spent on repairs during the years 1951 to 1958, inclusive. Uncontradicted evidence given by an expert, building inspector R. E. Dakan, established that the estimated replacement cost of this building would be $39,937.55 and the necessary repairs $30,241.20, —the latter item being over 75 per cent of the replacement cost. Regardless of the 50 per cent provision of the ordinance, this building is a nuisance. The same witness, Dakan, further testified: "Q. (PENDLETON) Mr. Dakan, you say this is a dangerous building, that it's not safe to live in in its present condition, what can be done to remedy this dangerous condition? A. The only reasonable thing that can be done is to tear it down and start over with a new building." Inspector Bernosky made a report following an inspection of this building in which he said: "This building is a dangerous building and is more than 50% damaged, decayed, deteriorated, and dilapidated; these conditions exist to such an extent that this building cannot be repaired so that it will no longer exist as a dangerous building and public nuisance, and is beyond the point of reasonable repair and must be demolished." Explaining this he testified as follows: "The floor joists on the second would present a major problem and would either require additional bearing partitions or it would require joists of a larger dimension. The fact that the roof load is subjecting this floor to additional weight would have to be taken into consideration. Some means of providing stability to the roof and removing a great deal of the load from the joists which are actually supporting most of the second floor at [sic] would have to be taken into consideration. I think it would be a question of rebuilding the entire building. Q. Based upon your experience then in the building trades all your life, is it your best judgement that this building is beyond repair? A. Whether it is beyond repair I don't know. I think it is infeasible to repair a building like this considering the fact that you probably could have a new building built for less than what a building like this could be repaired for to conform to an acceptable standard."

The trial judge found upon this and other substantial evidence that appellant's building "is a public nuisance, is unsafe, substandard, nonconforming, a fire hazard, and a menace to life, limb, property and the safety and welfare of the com-

munity, and that structure cannot be reasonably repaired; that it must be demolished.''

The findings of the board and of the superior court are undoubtedly supported by the evidence. (See *Endo* v. *State Board of Equalization*, 143 Cal.App.2d 395, 399 [300 P.2d 366].) The ordinance as applied to appellant's property is not invalid.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1959.