[Civ. No. 24289. Second Dist., Div. One. Sept. 12, 1960.]

SAMUEL YEN ENG et al., Appellants, v. BOARD OF BUILDING AND SAFETY COMMISSIONERS OF THE CITY OF LOS ANGELES, Respondent.

Hiram W. Kwan for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Marcus E. Crahan, Jr., Deputy City Attorney, for Respondent.

SCOTT (Robert H.), J. pro tem.*—From a judgment denying a peremptory writ of mandate petitioners have appealed.

Respondent board had made an order on August 6, 1959, directing the vacating and demolition of a 50-year-old wooden seven-story "apartment-hotel" building located at 255 Bunker Hill Avenue in the city of Los Angeles. Appellants sought from the trial court a peremptory writ of mandate to compel

*Assigned by Chairman of Judicial Council.

the respondent board to set aside its order. This was denied and judgment was entered in favor of respondent.

Appellants own the subject property. Of its seven stories there are four stories facing the street and all seven face the rear lot line. It has been used for residential purposes.

On May 4, 1959, and on four subsequent days at direction of respondent a hearing was conducted by a hearing examiner as to the condition of the building. Respondent was represented by the city attorney. Appellants appeared in propria persona and conducted their defense with vigor and intelligence.

Respondent presented evidence from three building inspectors, an electrical inspector, a plumbing inspector, a structural engineer, a health inspector and a fire inspector. Appellants called as witnesses a plumbing contractor, a general contractor, an electrical contractor, a real estate broker, a civil engineer and a past manager of the building.

On July 9, 1959, the hearing examiner filed his report, findings and recommendations with respondent board. Appellants filed their counter proposals. A hearing on the matter was concluded by the board and its resolution and order to vacate and demolish was issued on August 6, 1959.

On October 8, 1959, the trial court reviewed the administrative record and considered oral and written argument.

On October 15, 1959, it issued findings including a determination that appellants' building is now in such a state of decay, deterioration and structural instability and is so unfit for human habitation that it is no longer reasonably repairable, but amounts to a public nuisance which can only be reasonably abated by demolition.

■■■ Appellants' first point on this appeal is a declaration that they were prejudiced because certain allegations of their first amended petition were stricken out by the trial court. This ruling, however, correctly excluded matters which were extraneous to the issues which the trial court was called upon to review. The allegations related to action taken by respondent board in December, 1956, after a fire in the building necessitated repairs which had cost over $15,000. A permit to repair the fire damage had at first been denied by respondent but was later granted. Appellants expressed a belief that the original denial was in response to an ''order'' of the community redevelopment agency to the effect that no further repairs or alterations be made to Bunker Hill area proper-

ties. Appellants assert that the subject property is located in an area which is earmarked for development in the near future.

This allegation that plaintiffs were prejudiced as a result of the order striking this portion of the pleading is not supported by a claim that evidence, if any, on this point was not available at the hearing before respondent board or that a substantial showing on this alleged issue was made at that hearing. It would seem that weak and remote evidence in support of this accusation could not outweigh the clear and convincing proof of the deteriorated and dangerous condition of appellants' property.

Although the trial court at a hearing under Code of Civil Procedure, section 1094.5, in a proper case may receive additional evidence, its review is confined to the issues appearing in the record of that body as made out by the parties to the proceedings. (*Bohn* v. *Watson,* 130 Cal.App.2d 24, 37 [278 P.2d 454].)

The order of respondent board is supported by competent and persuasive evidence to the following effect: The cost of replacing the building with materials and in the manner of its original construction is $141,352.34; to make the building reasonably safe for present use is $164,834.57; to reconstruct it to meet present legal requirements would cost $470,000; it is located in a highly congested commercially zoned fire district; when erected it was of minimum construction; decay, fire damage and deterioration are evident; it is dried out, weathered and damaged so that it offers no fire-resistance and would be consumed by a fire in a matter of minutes; it is on a steep hillside (30 per cent slope) and rests upon deteriorated footings without underlying foundation pad or fastening into the slope for lateral support and shows structural failure and instability; unvented cooking appliances are used; electrical system is dilapidated and overloaded; heating is limited to unvented ranges and hot plates; plumbing is inadequate; it is not safe or fit for human habitation. Detailed testimony was presented as to decayed and fallen plaster, sagging floors and ceilings, fractured and sinking foundations, rotted wood in studs and mudsills, split girders, a water heater vented into a chimney with loose bricks, deteriorated mortar and an inadequate base which has permitted the chimney to settle. It is unnecessary to review more of the contents of 650 pages of the testimony at the hearing by re-

spondent board to indicate that there was ample evidence to justify its order to vacate and demolish as the only means to abate a public nuisance, because the structure is obviously a fire hazard, is in danger of collapse, is unfit for residential or other use, and is a continuing hazard to other structures. Appellants offered testimony that estimated cost of repairs to bring the building up to a reasonably safe condition structurally would be $23,000, and to make it reasonably fire resistive would cost an additional $30,000 and expressed willingness to expend this amount for that purpose and to avoid vacating and demolition.

The trial court found that petitioners (appellants herein) were given a fair and legally proper hearing and trial by respondent board; that the latter did not abuse its discretion; that its order is supported by written findings of fact and that these are supported by substantial evidence; that sections of the Los Angeles City Building Code were properly applied under the facts. Having concluded that setting the standards contained in these code provisions and applying them to appropriate facts is a valid exercise of police power the trial court determined that petitioners were not entitled to a writ of mandate and gave judgment accordingly.

The two sections of the building code concerning which appellants now complain read as follows:

Section 96.112, chapter 9, Los Angeles Municipal Code:

"The following standards shall be followed in substance by the Board in ordering the repair, vacation or demolition of any building or structure. Any order to demolish, rendered pursuant to this subsection, shall not indicate an alternative permission to repair; however, an order to repair may be satisfied by demolition.

"(a) If the dangerous building or substandard residential building can be reasonably repaired so that it will no longer exist in violation of the Los Angeles Municipal Code, it shall be ordered repaired.

"(b) If the dangerous building or substandard residential building is in such condition as to make it dangerous to the health, morals, safety, or general welfare of its occupants, it shall be ordered to be vacated.

"(c) In any case where a dangerous building is 50 per cent damaged, or decayed, or deteriorated, it shall be demolished.

"(d) In all cases where a dangerous building or substandard residential building cannot be reasonably repaired so that

it will no longer exist in violation of the terms of the Los Angeles Municipal Code, it shall be vacated and demolished.

"(e) In all cases where a dangerous building or substandard residential building is a fire hazard, existing or erected in violation of the terms of this division or any ordinance of this City, or statute of the State of California, it shall be demolished."

Section 91.1603(b), chapter 9, Los Angeles Municipal Code:

"Nonconforming Buildings. Alterations and repairs to a nonconforming building in a fire district may be of the same type of construction as the existing building if the aggregate value of such repairs, in any one year, does not exceed 10 per cent of the replacement cost of the building.

"Alterations or repairs in excess of 10 per cent of the replacement cost of the building or structure may be made provided all of the repairs and the new construction conforms to the materials and type of construction required for a new building of like area, height and occupancy in the same location.

"Whenever a nonconforming building or structure has been damaged or is in need of repairs or alterations required by the Los Angeles Municipal Code in an amount exceeding 50 per cent of the replacement cost, the entire building or structure shall be made to conform to the Code or shall be demolished."

Appellants "concede that there is substantial evidence in the record from which the respondent Board and lower court might find that appellants' building is unsafe, substandard and a public nuisance." The question is declared to be whether the nuisance can be reasonably abated by means other than demolition, and points to the disparity in cost estimates between their evidence that $53,000 would have to be expended and the evidence before the board that it would cost $164,834.87 to make repairs and reduce the fire hazard so that it would be reasonably safe for present occupancy. Even this larger sum would not make the building measure up to present-day code requirements.

Appellants say they have no quarrel with respondents' position "that the protection of public health, safety and general welfare in the safeguarding and upgrading of community living standards is of primary public concern." (*Berman* v. *Parker,* 348 U.S. 26 [75 S.Ct. 98, 99 L.Ed. 27].)

They direct our attention to language of the case of *Pennsyl-*

*vania Coal Co.* v. *Mahon*, 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322, 326, 28 A.L.R. 1321] : "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

■ However, it is not the province of this reviewing court in this case to consider the cautiously disclosed hope of appellants that with property in the Bunker Hill area being taken for an extensive community redevelopment project that if they can keep their building from falling down or burning until condemnation proceedings are instituted they might receive an award of money in payment for a structure which under the present judgment they must at their own expense demolish and remove. We find no comment by appellants on the danger to the lives, persons and property of their tenants and others in case of collapse or fire in the intervening time.

■ Respondent board acted as a quasi-judicial body empowered to make final adjudications of fact in connection with matters properly submitted to it. The power of the trial court was confined to determining whether there was a fair trial and whether there was substantial evidence before the board to support its findings, in the light of the whole record. (*Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 240 [259 P.2d 649] ; Code Civ. Proc., Sec. 1094.5; *Armistead* v. *City of Los Angeles,* 152 Cal.App.2d 319, 323 [313 P.2d 127].)

There was competent sworn evidence that the subject property falls within the legal concept of a nuisance (Health & Saf. Code, §§ 12510, 15024, 17821) and that there is no other way reasonably to correct the nuisance. ■ Respondent board has power, aside from the municipal code, to abate a public nuisance. (*Perepletchikoff* v. *City of Los Angeles,* 174 Cal.App.2d 697, 699 [345 P.2d 261].)

■ This appellate court therefore will not reweigh the evidence. (*Southern Calif. Jockey Club, Inc.* v. *California etc. Racing Board,* 36 Cal.2d 167 [223 P.2d 1].)

Appellants urge that the standards set by municipal code sections above quoted are unreasonable and invalid and have been applied by respondent board in violation of the 14th Amendment of the Constitution of the United States and of article I, section 13 of the Constitution of the State of California. ■ Ordinances are presumed to be valid, and no provision of the challenged ordinance may be condemned as an improper exercise of the police power if any rational ground

exists for its enactment. (*In re Petersen,* 51 Cal.2d 177, 182 [331 P.2d 24].) The provisions quoted are reasonable and their application was a proper exercise of police power under facts as shown by the record in the instant case. (*Baird v. Bradley,* 109 Cal.App.2d 365 [240 P.2d 1016] ; *Perepletchikoff* v. *City of Los Angeles, supra,* 174 Cal.App.2d 697 ; *Sullivan* v. *City of Los Angeles,* 116 Cal.App.2d 807, 810 [254 P.2d 590].)

Their object in protecting public health, safety and general welfare is one for which the police power may legitimately be invoked and these code provisions bear a reasonable and substantial relation to the object sought to be attained. This court will not declare them to be unconstitutional. (*Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141, 156 [346 P.2d 737].)

The record does not disclose that in the procedure followed by respondent board or the trial court there was any denial of due process. (*Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 362 [203 P.2d 37].)

Judgment affirmed.

Fourt, Acting P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 10, 1960, and appellants' petition for a hearing by the Supreme Court was denied November 9, 1960.