[L. A. No. 28224. In Bank. Feb. 4, 1966.]

CITY OF BAKERSFIELD, Plaintiff, Cross-defendant and Respondent, v. MILTON MILLER, Individually and as Trustee, etc., Defendant, Cross-complainant and Appellant.

Milton Miller, in pro. per., for Defendant, Cross-complainant and Appellant.

Kenneth W. Hoagland, City Attorney, Martin & Flandrick and Robert Flandrick for Plaintiff, Cross-defendant and Respondent.

James A. Nicklin, Taylor & Barker and Marcus E. Crahan, Jr., as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

MOSK, J.—In this appeal the defendant challenges the power of a municipality to determine that an existing building, failing to conform to current standards of safety incorporated in a municipal building code enacted since the construction of the building, is a public nuisance. The trial court determined that defendant's hotel constituted a public nuisance under a City of Bakersfield ordinance and ordered that the statutory violations be corrected or that the upper floors of the building be vacated. Defendant's cross-complaint, which sought to enjoin the city from posting signs proclaiming that the building is unsafe, was dismissed.

 We conclude that the city acted within its constitutional and statutory powers in enacting and enforcing the ordinance and that the resultant judgment deprives defendant of no constitutionally protected right.

Defendant is the owner of record of the Hotel Padre, an eight-story building constructed in the central area of Bakersfield in 1929. His acrimonious dispute with the city originated in the autumn of 1955 when he received notice that the hotel did not conform to the city building code. There followed an interminable series of conferences between defendant and various city officials in which defendant repeatedly claimed that he was financially unable to accomplish the required repairs and modifications. Initially the discussions were amicable, and defendant's protestations of impecuniosity were considered sympathetically. For several years city officials attempted to persuade defendant to voluntarily comply with the ordinance, but no attempt was made to compel him to do so. In 1959 a captain of the fire department suggested that he take some step to demonstrate good faith, and early the following year defendant modified a fire escape so as to comply with the code. Except for this sole improvement, defendant has totally failed to remedy the building code violations existing in the hotel.

With the passage of time the city became increasingly impatient with defendant's indifference and less responsive

to his chronic pleas of financial hardship. In August 1960 he was formally notified that the building violated the ordinance with reference to specific shortcomings, and the city demanded that he undertake some corrective action within 48 hours. This directive was ignored, and another meeting with defendant was held in February 1961. At this session defendant refused to commit himself to any course of action, not even to the commencement of compliance with the ordinance. Shortly thereafter the city council passed a resolution requesting him to install a sprinkler system in the basement and on the first floor of the hotel within six months and to modify successive floors of the building at regular intervals. The entire building was to conform to the code within 12 years. Defendant's only response to this resolution was to erect what he described as an "Alamo-Tombstone sign" on the building to herald his defiance of the city council. On September 1, 1961, this action was filed, and the city posted notices on the building warning that it was unsafe for occupancy.

The complaint filed by the city alleges that the Padre Hotel constitutes a fire hazard and a public nuisance as defined by a city ordinance enacted in May 1959. This ordinance adopted by reference the 1958 edition of the Uniform Building Code, drafted by the International Conference of Building Officials. Earlier editions of the code had been in effect in Bakersfield since 1951, and it appears that the portions of the code at issue in this case have not been materially modified since the date of its first adoption by the city.

The Uniform Building Code has been enacted by many cities throughout the state. The authority of local agencies to adopt such uniform codes by reference is specifically provided by Government Code sections 50022.1-50022.8, and the practice of adoption by reference has been judicially approved. (*Natural Milk etc. Assn.* v. *City & County of San Francisco* (1942) 20 Cal.2d 101, 115-116 [124 P.2d 25], vacated as moot on federal questions in (1943) 317 U.S. 423 [63 S.Ct. 359, 87 L.Ed. 375], and readopted in (1944) 24 Cal.2d 122 [148 P.2d 377].) In *Agnew* v. *City of Culver City* (1956) 147 Cal.App.2d 144, 153-157 [304 P.2d 788], the court criticized the practice of adopting codes promulgated by private associations if the intent is to adopt in advance changes which the association might choose to make at some future

time (*Brock* v. *Superior Court* (1937) 9 Cal.2d 291, 297-298 [71 P.2d 209, 114 A.L.R. 127]; but see *Ex parte Gerino* (1904) 143 Cal. 412, 418-419 [77 P. 166, 66 L.R.A. 249]). However, these cases are inapposite since the City of Bakersfield adopted an existing text.

Undisputed evidence at the trial demonstrated that the Padre Hotel violates several provisions of the uniform code. The interior stairways are unenclosed and leave an open shaft in the building from the second floor to the roof. The elevator shafts are improperly enclosed; other shafts and ducts contain combustible materials and cannot be closed off by dampers. The boiler room is not separated from the rest of the building by fire resistant materials; exit signs are not of the required size and are inadequately illuminated; and the fire escapes are improperly constructed, with the exception of the one improved in 1960. The sleeping rooms of the hotel are connected with the hallways by doors with transoms above them, and it is necessary to keep the transoms open during much of the year because the hallways are used as a return duct for the hotel's air-cooling system.

There is evidence in the record that the hotel is constructed of noncombustible materials and therefore might be deemed a fireproof building. However, experts testified that devastation from fire comes not merely from the flames but substantially from the smoke which the fire produces. They stated that the construction of the hotel was such that if a fire started in one of the rooms, the smoke would almost immediately enter the hallways through the open transoms, carried by the forced air from the cooling system, and would quickly travel through the open ducts and stairways to all floors of the building. Thus, even though the building might be described as fireproof, expert testimony indicated that it could reasonably be considered to be unsafe for occupancy as a hotel because of the danger of spreading smoke.

The trial court concluded that the hotel constitutes a fire hazard within the meaning of the uniform code adopted by the city and that under the terms of section 203, subdivision (a), of the code it is a public nuisance.

Defendant does not deny that the ordinance has been violated. However, he contends that the city exceeded its legislative powers in declaring as a matter of law that such violations constitute a public nuisance and maintains that the trial court erred in failing to make an independent finding as

to whether the building was in fact a nuisance under state law.

The Legislature has defined in general terms the word "nuisance" in Civil Code section 3479, which states, "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance."[1] In *People* v. *Lim* (1941) 18 Cal.2d 872 [118 P.2d 472], the prosecutor requested that the court enjoin gambling operations of the defendant; it was not alleged that gambling activities were within the definition set forth in Civil Code section 3479, but the People maintained that this statutory definition is not exclusive and that the court was empowered by the common law to restrain such activities. This contention was rejected. The court noted that the term "nuisance" is peculiarly amorphous, and concluded that "In a field where the meaning of terms is so vague and uncertain it is a proper function of the legislature to define those breaches of public policy which are to be considered public nuisances within the control of equity. Activity which in one period constitutes a public nuisance, such as the sale of liquor or the holding of prize fights, might not be objectionable in another. Such declarations of policy should be left for the legislature." (*People* v. *Lim, supra,* at p. 880.)

Although this court has thus held that "nuisance" is a term for the Legislature to define, the semantics of Civil Code section 3479 provide little guide in ascertaining the degree of danger which must be present for a condition or an activity to be considered a nuisance. Almost all human activity involves some risk, and in circumstances in which Civil Code section 3479 is the only applicable statute, considerable judicial discretion has been allowed in determining whether an alleged danger is sufficiently serious to justify abatement. However, in certain areas of law the term has been defined with more particularity. Thus, California Administrative Code, title 8, section 17200.65, which is a part of the state housing regulations, provides that overcrowding, insufficient ventilation and illumination, inadequate plumb-

[1]Civil Code section 3480 states, "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons. . . ." It is clear that if the Padre Hotel is a nuisance, it would be classified as a public nuisance under this section.

ing and other similar conditions within certain buildings shall be deemed public nuisances. Legislation in other fields has defined the term with even greater specificity.[2]

■ Where the Legislature has determined that a defined condition or activity is a nuisance, it would be a usurpation of the legislative power for a court to arbitrarily deny enforcement merely because in its independent judgment the danger caused by a violation was not significant. The function of the courts in such circumstances is limited to determining whether a statutory violation in fact exists, and whether the statute is constitutionally valid.

■ City legislative bodies are empowered by Government Code section 38771 to declare what constitutes a nuisance. Since even without this section cities would have the power to abate public nuisances (Code Civ. Proc., § 731) and to impose criminal sanctions upon those maintaining public nuisances (Pen. Code, § 373a) it seems evident that Government Code section 38771 does more than permit cities to adopt as municipal ordinances provisions which have already been enacted as state statutes; such an interpretation would make the section superfluous. ■ It may be contended that the section delegates to municipalities only the power to declare as nuisances specific conditions within the general areas of regulation enumerated in Civil Code section 3479, but we do not reach this question here since a fire hazard clearly constitutes a nuisance within the provisions of section 3479. (See, e.g., *People* v. *Wing* (1905) 147 Cal. 382, 383 [81 P. 1104] ; *County of San Diego* v. *Carlstrom* (1961) 196 Cal. App.2d 485, 491 [16 Cal.Rptr. 667] ; *Yen Eng* v. *Board of Building & Safety Comrs.* (1960) 184 Cal.App.2d 514, 521 [7 Cal.Rptr. 564] ; *Perepletchikoff* v. *City of Los Angeles* (1959) 174 Cal.App.2d 697, 701 [345 P.2d 261].) ■ Therefore, the City of Bakersfield has the power to define by statute the standards by which courts are to judge whether a nuisance exists, and the trial court did not err in refusing to decide this case on the basis of common law concepts or of the general provisions of Civil Code section 3479.

■ Defendant's contention that state housing requirements have preempted this field of regulation is without

---

[2]For example, Streets and Highways Code section 670, subdivision c, provides that the placing of an unauthorized sign in, above, or below a highway is a nuisance, as is conducting a business without compensation security (Lab. Code, § 3712), or the presence of camelthorn, Austrian field cress or black currant on one's property (Agr. Code, §§ 159-160).

merit. While the state housing provisions are detailed and comprehensive (see Cal.Admin.Code, tit. 8, ch. 9), Health and Safety Code section 17951 specifically provides that a city or county may impose standards which equal or exceed the state regulations. This provision would not validate a city ordinance if it in fact conflicted with a state statute (*Natural Milk etc. Assn.* v. *City & County of San Francisco* (1942) *supra*, 20 Cal.2d 101, 111, vacated as moot on federal questions in (1943) 317 U.S. 423, and readopted in (1944) 24 Cal.2d 122), but conflict is precluded by Health and Safety Code section 19825 which provides that the state statutes and regulations shall be inapplicable within cities which adopt such ordinances.

■ Section 203, subdivision (a), of the Uniform Building Code does not, as defendant implies, declare that buildings which violate the code only in some minor or technical respect are nuisances; it proscribes as nuisances only those buildings which contain some condition which would seriously endanger public health or safety.[3] The provisions of the section are not unreasonable, and the finding of the trial court that the building constitutes a fire hazard within the meaning of this section is amply supported by the evidence.

Thus, we reach the question whether standards of fire safety incorporated in the code are unconstitutional as applied to buildings which were constructed prior to its enactment and which at the time of construction conformed to all existing statutes. Defendant asserts that the costs of remodeling the building to conform to the code would be excessive and thus deprive him of property without due process of law.

■ The fact that a building was constructed in accordance with all existing statutes does not immunize it from subsequent abatement as a public nuisance. (*Queenside Hills Realty Co.* v. *Saxl* (1946) 328 U.S. 80, 83 [66 S.Ct. 850, 90 L.Ed. 1096]; *Knapp* v. *City of Newport Beach* (1960) 186

---

[3]Section 203, subdivision (a) provides in relevant portion, "All buildings or structures which are structurally unsafe or *not provided with adequate egress, or which constitute a fire hazard,* or are otherwise dangerous to human life, or which in relation to existing use constitute a hazard to safety or health, or public welfare, by reason of inadequate maintenance, dilapidation, obsolescence, or abandonment, as specified in this Code or any other effective ordinance, are, for the purposes of this Section, unsafe buildings. All such unsafe buildings are hereby declared to be public nuisances. . . ." (Italics added.)

Cal.App.2d 669, 681 [9 Cal.Rptr. 90].) In this action the city does not seek to impose punitive sanctions for the methods of construction used in 1929, but to eliminate a presently existing danger to the public. It would be an unreasonable limitation on the powers of the city to require that this danger be tolerated ad infinitum merely because the hotel did not violate the statutes in effect when it was constructed 36 years ago.

In considering the constitutionality of a housing code, we do not overlook the evident fact that the cost of modification of an existing building will in most cases be more expensive than incorporating the required safety features into the original design of a new building. Thus, it has been recognized that a building code may constitutionally impose stricter standards for newly constructed buildings than for those which existed at the time the code was enacted (*Matter of Stoltenberg* (1913) 165 Cal. 789, 794 [134 P. 971]). The Uniform Building Code makes such a distinction. ■ However, the constitutional criteria to be applied in either case are whether the expenses necessarily incurred in complying with the statute and the sanctions imposed for noncompliance are reasonable in relation to the public health or safety interest being protected.

■ Defendant presented evidence at the trial that it would cost a minimum of $68,000 to modify the hotel to comply with all provisions of the building code. The closing of the transoms would render the hotel's cooling system inoperative, and the cost of modifying the building and installing new air conditioners would be approximately $127,000. As an alternative, the city agreed to waive all code requirements if defendant would install an approved automatic sprinkler system throughout the hotel; the minimum cost of installing such a system would be $54,600. Defendant claims that the installation of sprinklers would necessitate the construction of false ceilings in order to conceal the pipes and preserve attractive qualities of the hotel. While the aesthetic appeal of a hotel is not to be disparaged, the trial court was justified in considering it secondarily in weighing the validity of the city's concern for public safety.

■ Defendant estimates that the present value of the building, exclusive of the land on which it is situated, is $100,000, but he also admits that federal tax assessors valued it at $250,000, when he purchased a majority interest in the building in 1954, and that it is assessed at an even higher

figure by local tax authorities. Thus it appears that the city's repair requirements were not inordinately costly, even in relation to the most conservative of these valuations.

In appropriate circumstances, a governmental agency may abate a public nuisance even though to do so requires that a building be demolished. (*Yen Eng* v. *Board of Building & Safety Comrs.* (1960) *supra*, 184 Cal.App.2d 514; *Takata* v. *City of Los Angeles* (1960) 184 Cal.App.2d 154 [7 Cal.Rptr. 516]; *People* v. *Ryan* (1936) 17 Cal.App.2d 1 [61 P.2d 360]; *People* v. *Foerst* (1935) 10 Cal.App.2d 274 [51 P.2d 455].) In most of the foregoing decisions the danger appeared to be of greater magnitude than that involved in the cause at hand, but the remedy was also more drastic.

In this case, compliance with the ordinance would in all probability result in increased value of the hotel rather than diminution or destruction as in the cases listed above. Under such circumstances the statutory mandate is not unconstitutionally onerous.

The contention was made that the ordinance by its terms discriminates against the owners of certain buildings and deprives them of the equal protection of the laws, since the building code provisions involved here apply only to hotels and apartment houses containing more than two stories. On that subject expert witnesses testified that the height of a building is a factor accelerating the danger to occupants who might be trapped during a fire and that hotels are particularly vulnerable to fires. In addition, it should be noted that this height classification is a part of the Uniform Building Code which was in effect prior to the time defendant purchased a majority interest in the hotel. Therefore, his assertion that the code was enacted by the city for the purpose of discriminating against him is unconvincing, and no unequal protection of the laws appears.

The evidence also fails to support defendant's claim that city officials have discriminated against him in enforcing the ordinance. The relevant code provisions apply to 13 buildings within the City of Bakersfield, and the owners of two of the buildings have voluntarily vacated upper floors of the structures at the request of the city. The other 11 buildings either have been remodeled so as to substantially comply with the code or were in the process of effecting such modifications at the time of the trial. Defendant was first notified of the code violations in 1955; it would seem that a decade

offers ample opportunity to correct the violations at a moderate pace.

It is undisputed that conditions within the Hotel Padre violate provisions of the Uniform Building Code which has been adopted by the City of Bakersfield. The substantive provisions of the code deprive defendant of no right protected by the Constitution, and it is clearly within the statutory powers of the city to declare that buildings violating the ordinance in ways which directly affect the health and safety of the public are public nuisances. Therefore, the trial court did not err in ordering that the nuisance be abated.

The cross-complaint, in which defendant sought relief from the posting of signs on his premises without an opportunity to be heard, was properly dismissed. The trial itself constituted a public hearing on the matter.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

Appellant's petition for a rehearing was denied March 2, 1966.