[Civ. No. 27288. First Dist., Div. Three. Oct. 20, 1971.]

HARRISON McNEAR LEPPO, as Trustee, etc., et al.,
Plaintiffs and Respondents, v.
CITY OF PETALUMA et al., Defendants and Appellants.

714

## COUNSEL

Edouard E. Robert, City Attorney, and William B. Boone for Defendants and Appellants.

John D. Flitner, City Attorney (Santa Rosa), Michael J. Donovan, Assistant City Attorney, Allen Grimes, City Attorney (Beverly Hills), John A. Van Ryn, City Attorney (Santa Maria), John D. Maharg, County Counsel (Los Angeles) and Edward H. Gaylord, Assistant County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Lounibos & Lounibos, John B. Lounibos, Lamson, Jordan, Walsh & Lawrence, Paul S. Jordan and Michael P. Carbone for Plaintiffs and Respondents.

## OPINION

**BROWN (H. C.), J.**—Respondents were awarded a judgment in the sum of $30,636.42 by reason of the demolition of their building by the City of Petaluma and their demolition contractor, Cecil H. Kinney.

The City of Petaluma claims (1) that respondents' complaint did not state a cause of action; (2) that the respondents should have instituted an action to restrain the demolition; (3) that the trial court erred in ruling that the city had the burden of proving the dangerous condition of the building, and (4) that the evidence did not support the trial court's finding that the building was not a public nuisance.

Appellant Kinney contends that the liability, if any, is upon the public agency and not the contractor.

Respondents, as trustees of a testamentary trust, are the owners of real property in the City of Petaluma. The property was improved with a three-story building known as the American Hotel Building which was approximately 100 years old at the time of its demolition. The two upper floors were used for hotel or rooming house purposes, and the street floor was divided into three stores occupied by tenants engaged in various types of retail business.

In January of 1966, a one-story structure abutting the building was demolished. The north wall of respondents' building was thus exposed disclosing its dilapidated condition. The city building inspector and city engineer, after examination of its exposed condition, concluded that the building was unsafe for occupancy. The respondents were notified. A structural engineer employed by respondents, however, disputed the city's opinion that the building was imminently dangerous. Thereafter considerable correspondence was had between the city and respondents. In May, the city wrote to the occupants and suggested that they take immediate steps to relocate because of the opinion that cracks in the building were widening.

The city council also determined in May to proceed to demolish the building without any judicial determination that it constituted a nuisance. The city attorney wrote respondents' attorney advising that if respondents did not express an intention by June 10 to act upon their own to demolish the building, the city would proceed with the demolition. At a meeting of the city council on June 13, 1966, a resolution was passed declaring the building to be a public nuisance and directing its abatement. Pursuant thereto, appellant Kinney, a contractor, was awarded a contract by the city council for the demolition. Kinney completed the demolition in September. Thereafter this action was instituted which resulted in a judgment for respondents in the sum of $30,636.42.

Appellants contend that the complaint was fatally defective because it failed to allege that the building was not a public nuisance; that there was a failure to give respondents an opportunity to be heard, and that there was a failure to obtain a judicial or administrative determination of whether the building was a nuisance.

Respondents' complaint alleged that ". . . [D]efendant CECIL H. KINNEY . . . entered into a contract with defendant city to undertake the demolition of the building. Pursuant to said contract and acting at the direction of said defendant city, said defendant CECIL H. KINNEY *unlaw-*

*fully entered upon* plaintiffs' said real property, over their objections and without their consent, and proceeded to demolish the entire building situated thereon. . . ." (Italics added.)

The complaint also alleged that the city council took *summary action* to abate as a public nuisance plaintiffs' property *without a court determination.*

"In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

■ "In the exercise of the right of eminent domain, private property may not be taken without compensation therefor, whereas, in the exercise of the police power, the use of property may be restricted or it may even be destroyed, and no legal liability arises to compensate the owner therefor." (*Patrick* v. *Riley,* 209 Cal. 350, 355 [287 P. 455], quoting from *Gray* v. *Reclamation Dist.,* 174 Cal. 622, 638 [163 P. 1024].) ■ An unjustified or unlawful exercise of the police power in destroying a private dwelling will give rise to a cause of action for damages against the public authority. (See also *House* v. *L. A. County Flood Control Dist.,* 25 Cal.2d 384, 388-389 [153 P.2d 950].)

■ We have concluded that under the rule of construction and the applicable law set forth above, the cause of action was sufficiently pleaded. (See *Solly* v. *City of Toledo,* 7 Ohio St.2d 16 [36 Ohio Ops.2d 9, 218 N.E.2d 463].)

■ Appellants' next contention is that respondents should have sought an extraordinary writ to restrain the demolition.

It is not disputed that the respondents could have sought relief from the city's order by proceeding under section 1094.5 of the Code of Civil Procedure to restrain the demolition. As appellants point out, this has been done in a number of cases. (E.g., *Armistead* v. *City of Los Angeles,* 152 Cal.App.2d 319 [313 P.2d 127]; *Yen Eng* v. *Board of Building & Safety Commissioners,* 184 Cal.App.2d 514 [7 Cal.Rptr. 564]; *Perepletchikoff* v. *City of Los Angeles,* 174 Cal.App.2d 697 [345 P.2d 261].) These cases, however, do not hold or contain language which would support a holding that the property owner waives his right to bring an action for damages by a failure to proceed by way of an extraordinary writ. Obviously the city also had an alternative to summary abatement and could itself have filed a complaint seeking a judicial determination that the building was a public nuisance. (E.g., *City of Bakersfield* v. *Miller,* 64 Cal.2d 93 [48 Cal.Rptr. 889, 410 P.2d 393].) The city can hardly now complain that the respondents did not seek the earlier remedy which it had decided to forego.

No California case has been cited or found in which the landowner has

brought a suit for damages after destruction of the building. In the Ohio case of *Solly* v. *City of Toledo,* 7 Ohio St.2d 16 [36 Ohio Ops.2d 9, 218 N.E.2d 463, 467], the court stated: "It may be suggested that, after plaintiff was notified that the city had found public nuisances to exist at her two properties and that unless she abated those nuisances within 30 days the city would destroy the properties, plaintiff should have sought to enjoin the city from destroying those properties, and, not having done so, cannot now recover damages because the city did destroy them. However, the owner of property is under no duty to bring an action to enjoin its threatened wrongful destruction and failure to do so will not prevent recovery for damages caused by that destruction. (Moll Co. v. Holstner (1934), 252 Ky. 249, 67 S.W.2d 1.)"

We agree with the reasoning of *Solly* and apply it here. The remedies afforded an aggrieved owner of property include an action for damages as well as preventive measures by injunction proceedings.

█ The next question raised is whether the trial court erred in holding that the city had the burden of proving that respondents' building constituted a public nuisance and as such warranted summary demolition.

Respondents, as plaintiffs, produced evidence that they were the owners of the building; that their engineer had given them information that the building was not a danger and that they had refused written or oral authorization to the City of Petaluma to demolish the building, and, further, that they were not afforded a hearing on the question of the immediate need for the demolition and thus were denied the right to cross-examine the city's witness. Respondents presented evidence of the value of the building and that the $6,036 bill represented in the bill for demolishing the building was a lien against the property. Respondents then rested. Appellants thereafter proceeded with evidence that the building was a nuisance and constituted a danger necessitating its immediate demolition.

█ The official duty of the city in a case in which they seek to abate a nuisance is to afford the property owner a due process hearing which consists of an opportunity to be heard (*Thain* v. *City of Palo Alto,* 207 Cal. App.2d 173, 191 [24 Cal.Rptr. 515]) and a determination upon competent sworn testimony. (*Armistead* v. *City of Los Angeles, supra,* 152 Cal.App. 2d 319, 324.)

█ "Although it is elementary that an owner of property has no constitutional right to maintain it as a public nuisance, it is equally elementary that he has a clear constitutional right to have it determined by due process whether in fact and law it is such a nuisance. As against this right, no ex parte declaration, however formal, by municipal authorities that it is a nuisance is final as against him.

"It is said that even at common law a city or town has power to abate a public nuisance. Usually it has statutory power, vested in its governing body, to declare and abate public nuisances. ■ But neither at common law nor under such express power can it, by its mere declaration that specified property is a nuisance, make it one when in fact it is not." (14 A.L.R. 2d § 8, p. 82.)

■ It is clear that the respondents were not afforded a due process hearing either in the form of a judicial determination or a hearing before an administrative body in which respondents had the opportunity to present evidence and cross-examine the city's witnesses. ■ " . . . [I]n such cases as this due process of law requires that any order of demolition of private property under the police power must be based upon competent sworn evidence that the subject property falls within the legal concept of a nuisance [citations], and that in fairness and in justice there is no other way reasonably to correct the nuisance. [Citation.]" (*Armistead* v. *City of Los Angeles, supra,* 152 Cal.App.2d 319, 324.)

■ In an emergency situation involving the physical safety of the populace, the city could dispense with a due process hearing and demolish a building summarily. (See 58 Am.Jur.2d, Nuisances, § 204, pp. 804-805.) However, to then argue, as do appellants, that the presumption of Evidence Code section 664* operates to shift to the property owner the burden of proving that his demolished building was in fact not a public nuisance would be to vitiate the requirement of article I, section 13 of the California Constitution that no person shall be deprived of property without due process of law. Although the city acted pursuant to Government Code sections which provide for the summary abatement of nuisances by the city (see Gov. Code, §§ 38660, 38771, 38773, 38773.5), these sections "like every other legislative, executive, or judicial power, . . . [are] subject to article I, section 13 of our California Constitution." (*Armistead* v. *City of Los Angeles, supra,* at p. 323.)

While we have not found authority in California that states where the burden of proof lies, other jurisdictions have held that the municipality has the burden of proof of the nuisance and the necessity for its immediate abatement. (See *Solly* v. *City of Toledo, supra,* at p. 466; *Crossman* v. *City of Galveston,* 112 Tex. 303 [247 S.W. 810, 815, 26 A.L.R. 1210]; *Lawton* v. *Steele,* 152 U.S. 133, 135 [38 L.Ed. 385, 388, 14 S.Ct. 499].) We feel that the reasoning of these cases should be applied here. Such conclusion is consistent with the rule requiring the state to have the burden of proving

---

*Evidence Code section 664 provides in pertinent part that: "It is presumed that official duty has been regularly performed. . . ."

the necessity for taking of private property for public use in condemnation proceedings.

We conclude that in emergency situations the city may act summarily to abate a nuisance, but in such case the city must be prepared to establish by a preponderance of evidence that an emergency actually existed. This was the burden imposed upon the appellants by the trial court. ▮ The trial court then found upon conflicting evidence that appellants had not met this burden of proving that the building was an immediate hazard and danger to the public at the time of its demolition. Our function as a reviewing court, therefore, is limited to determining whether there was substantial evidence to support this finding.

Respondents called Mr. Leslie Wallace Graham, a structural and civil engineer, who testified that repairs were feasible; that the brick wall did not pose an immediate danger or hazard; and that many buildings in the City of Petaluma had the same condition. This opinion by a qualified expert in the field clearly amounts to substantial evidence. Since the trial court had resolved the issue on substantial evidence, we are bound by that determination.

▮ Judgment was also awarded against appellant Cecil H. Kinney, the contractor engaged by the city to do the demolition of respondents' building. The judgment as to Kinney must be reversed.

"The law is well settled that the contractors or subdividers could not be held liable for the damage in a direct or inverse condemnation suit. ' "If the contractor follows the plans and specifications furnished by the public agency, and damage results to the adjacent property, the public agency and not the contractor is liable." ' [Citations.] The reason for the rule is obvious. In case of damages in an inverse condemnation proceeding it is the public that has devoted the property to the public use, and the public and not the private contractor should pay for the damage. . . ." (*Anderson* v. *Fay Improvement Co.*, 134 Cal.App.2d 738, 745-746 [286 P.2d 513]; see also *Di Maggio* v. *Mystic Building Wrecking Co.*, 340 Mass. 686 [166 N.E.2d 213, 218].)

The judgment in favor of respondents as against the appellant City of Petaluma is affirmed.

The judgment as to appellant Cecil H. Kinney is reversed.

Costs to be borne by the City of Petaluma.

Draper, P. J., and Caldecott, J., concurred.

A petition for a rehearing was denied November 8, 1971, and the petition of appellant City of Petaluma for a hearing by the Supreme Court was denied December 16, 1971.