Filed 11/16/21 City of Rancho Palos Verdes v. Indian Peak Properties CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CITY OF RANCHO PALOS VERDES, | B303638 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18STCV03781) |
| v. | |
| INDIAN PEAK PROPERTIES, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, Monica Bachner, Judge. Reversed and remanded with directions.

Bradley & Gmelich, Barry A. Bradley and Dawn Cushman for Defendant and Appellant.

Aleshire & Wynder, William W. Wynder, June S. Ailin and Alison S. Flowers for Plaintiff and Respondent.

Indian Peak Properties, LLC appeals the judgment entered in favor of the City of Rancho Palos Verdes in the City's lawsuit to abate a public nuisance. Indian Peak contends the trial court in granting the City's motion for summary judgment misapplied the legal standard for proving a public nuisance and, in any event, triable issues of material fact exist as to the elements of each of the City's three nuisance causes of action and Indian Peak's defenses to them. Indian Peak also argues the court abused its discretion by failing to stay the City's nuisance action pending finality of the decision in Indian Peak's related mandamus action challenging the City's revocation of the conditional use permit authorizing Indian Peak to operate commercial antennae on a residential property. Finally, Indian Peak appeals the postjudgment order awarding the City attorney fees as the prevailing party in the action.

We agree the court erred in granting summary adjudication as to one of the three causes of action alleged in the City's amended complaint. Accordingly, we reverse the judgment with directions and reverse as premature the postjudgment order awarding attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Indian Peak's Conditional Use Permit, Notice of Violation and Revocation*

The City has a municipal ordinance that regulates the installation and operation of commercial antennae. (Rancho Palos Verdes (RPV) Mun. Code, § 17.76.020, subd. (A).) Indian Peak is in the business of providing commercial and noncommercial radio communications.

2

On June 21, 2001 James Kay, Jr. (Indian Peak's principal and its predecessor in interest) applied for a conditional use permit authorizing the use for commercial purposes of what he described as preexisting noncommercial amateur antennae on the roof of residential property he owned on Indian Peak Road, Rancho Palos Verdes.[1] At that time there was a horizontal antenna rack mounted on the roof with five vertical antenna masts for the reception and transmission of radio and Internet signals; each mast had four radiating elements. There were also two television antennae on the roof.

The City issued the permit (CUP 230), which, after two proceedings in federal court, ultimately authorized the antenna array as configured in 2001. The resolutions concluding this phase of the parties' ongoing dispute required approval by the city council of an amendment to CUP 230 for any "future changes to the location or configuration or which increase the

---

[1] The evidence before the trial court on summary judgment concerning the controversy between Indian Peak and the City over Indian Peak's installation and operation of the antennae, which culminated in the revocation of Indian Peak's conditional use permit on August 21, 2018, was essentially identical to the evidence presented in support of and opposition to Indian Peak's petition for a writ of administrative mandamus, the subject of Indian Peak's appeal in *Indian Peak Properties, LLC v. City of Rancho Palos Verdes* (Nov. 16, 2021, B303325) [nonpub. opn.].) On July 15, 2021, although denying Indian Peak's motion to formally consolidate that appeal with this appeal from the judgment in the nuisance action, we advised the parties we would consider the two matters concurrently for purposes of decision. Accordingly, in this opinion we omit some of the history of the dispute, which is described in detail in our opinion in B303325.

number or the height of any approved antennae or element" of the original antenna array.

The City received a complaint in August 2014 (nine years after the final resolution modifying CUP 230) regarding the number of commercial antennae on the roof of the property. The City inspected the property and discovered there were now at least 11 vertical antennae (or antenna masts) and other equipment on the roof. On August 15, 2014 the City mailed Indian Peak a notice it was in violation of the provisions of CUP 230 and directed Indian Peak to "[r]emove all but five of the vertical antennae from the roof, and ensure the remaining five antennae meet the requirements as described" in CUP 230 or "[s]ubmit an application to the City, with the required fee, to request a revision to Conditional Use Permit No. 230 to allow the existing antennae to remain."

During the remainder of 2014 the City conducted additional inspections of the property, which confirmed that no changes had been made. A second notice of violation was sent on October 14, 2014, and a final notice on October 28, 2014. The last notice warned, if the violations continued to exist and no revision application was submitted, the matter would be referred to the city attorney's office. Counsel for Indian Peak asserted no revision to CUP 230 was required for the operation of the additional antennae.

Over the next three-plus years the City's attorneys and Indian Peak's counsel exchanged letters regarding the additional antennae, Indian Peak's obligation to comply with CUP 230 and the terms for an application to revise CUP 230. Of particular significance for the issues raised in the City's summary judgment motion, on May 5, 2016 Indian Peak's counsel proposed, as a

compromise, applying for a modification of CUP 230 under the expedited, "over-the-counter" review procedure provided in RPV Municipal Code section 17.76.020, subdivision (A)(12)(b), for new antennae on existing towers (with a $500 filing fee), with approval required only from the City's director of community development, rather than the full process for modification of a residential conditional use permit.  In a July 26, 2016 response the City explained CUP 230 expressly required that any additions to the antenna array be approved by the city council or through a formal modification of the conditional use permit, so the expedited process could not be used.  However, the City agreed to a lower fee for the application and authorized Indian Peak to submit with its application only the information required under the expedited process, rather than the more extensive information required for an amendment to a conditional use permit.

Indian Peak submitted an application for revision of CUP 230 on October 28, 2016.  On November 23, 2016 City staff notified Indian Peak it had reviewed the application and "due to missing information and/or inconsistencies between the project plans and submitted application, it has been determined that the application is incomplete."  City staff provided a detailed summary of the items that needed clarification or amplification and listed the additional information required.  Counsel for Indian Peak objected to the request, insisting it had provided all the information required by the City's July 26, 2016 letter.

The matter remained unresolved.  Indian Peak did not provide any additional information, and the City did not process the revision application.  On August 2, 2018 the City issued a notice of public hearing to consider revocation of CUP 230

"because of the Installation of unpermitted antennas exceeding the maximum of 5 Council-approved, roof-mounted antennae and support pole masts." The hearing was scheduled for August 21, 2018.

Indian Peak retained new counsel, who requested an extension of time to respond to the notice and a continuance of the revocation hearing. The request was denied.

Indian Peak's counsel submitted a written response to the notice, which stated Indian Peak was willing to work with the City and requested an additional 60 days to provide the documentation required for its application to revise CUP 230. At the August 21, 2018 hearing Indian Peak's counsel explained that with additional time she expected Indian Peak would "work with the City as far as removing some of the antennas but not all of the antennas that have been placed on here since the issuance of the original conditional use permit." Following counsel's comments, a staff presentation and public testimony from four neighbors, the city council voted to adopt resolution no. 2018-61 revoking CUP 230 in its entirety, effective immediately.

2. *The City's Lawsuit To Abate a Public Nuisance and Indian Peak's Petition for Writ of Administrative Mandamus*

On August 29, 2018 the City sent Kay a cease-and-desist demand notice, explaining CUP 230 had been revoked because of the installation of unpermitted roof-mounted antennae and directed that "all antennae-related operations cease and desist, and that all roof-mounted antennas must be removed from the premises immediately." The notice warned that noncompliance would result in immediate enforcement action.

On November 5, 2018 the City filed its original complaint in this action, alleging the existence of a public nuisance and seeking its abatement. The complaint named as defendants Indian Peak, Lucky's Two Way Radio (a Nevada corporation) and Kay, and alleged three causes of action for public nuisance and a cause of action for violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

Indian Peak filed a complaint for damages and petition for writ of administrative mandamus pursuant to section 1094.5 on November 19, 2018. The writ causes of action sought to compel the City to set aside its resolution revoking CUP 230 and either hold a new public hearing providing Indian Peak with an adequate opportunity to present a defense or determine Indian Peak's application for a revision to CUP 230 on the merits. In support of the writ petition, Indian Peak argued it had been denied due process and deprived of a fair hearing because its counsel was not provided a reasonable opportunity to prepare and present a defense. It also argued the City's action in revoking CUP 230 was arbitrary and capricious because the restrictions imposed were prohibited (or preempted) by federal law and the City had failed to consider the merits of its application for a revision to CUP 230.

After Indian Peak demurred to the original complaint, the City on February 13, 2019 filed the operative first amended complaint to abate a public nuisance, which named only Indian Peak as a defendant. The first cause of action alleged Indian Peak maintained a public nuisance based on its installation and operation of commercial antennae in violation of CUP 230, which constituted a violation of the RPV Municipal Code. The second cause of action alleged Indian Peak maintained a public nuisance

7

based on its operation of commercial antennae without an approved conditional use permit, which violated a separate provision of the RPV Municipal Code.  The third cause of action for maintaining a public nuisance, brought pursuant to Civil Code sections 3479 and 3480 (mislabeled as provisions of the Code of Civil Procedure), alleged the installation and operation of commercial antennae by Indian Peak on its property "are injurious to the public health, safety, and welfare and are so out of harmony with community standards and permissible land use to constitute a public nuisance and/or public nuisance per se." The City requested that Indian Peak be enjoined from installing or operating any unpermitted antennae and ordered to abate all conditions causing the nuisances described in the pleading.  The first amended complaint also requested an order that Indian Peak pay all outstanding citations, fines and penalties and that the City recover its costs of suit, including reasonable attorney fees.

Indian Peak filed a verified answer on March 19, 2019.[2] Among its 19 affirmative defenses Indian Peak alleged the City had consented to its conduct and the operative complaint was preempted by federal law.

---

[2]     Indian Peak's verified answer contained a lengthy "statement of facts," including, as paragraph KK, that, "[s]ince the City granted CUP No. 230, the only changes at the Subject Property were the number and type of antennas mounted on the horizontal support cross-arm.  It is incorrect for the City to assert that vertical antenna masts, or elements on those masts are 'additional towers.'  There is only one tower and one horizontal cross-arm support structure to which the vertical antenna masts are attached."

3. *The City's Motion for Summary Judgment; Indian Peak's Opposition and Request for a Stay of the Action*

On March 26, 2019, one week after Indian Peak answered the first amended complaint, the City moved for summary judgment or, in the alternative, for summary adjudication. As to its first two causes of action the City argued the evidence established Indian Peak installed and operated antennae not authorized by CUP 230, which violated RPV Municipal Code section 17.060.080 and constituted a nuisance per se under RPV Municipal Code section 1.08.010, subdivision (D), and continued to operate the antennae after CUP 230 was revoked, which violated RPV Municipal Code section 17.76.020, subdivision (A), and also constituted a nuisance per se. As to its third cause of action for maintaining a public nuisance in violation of Civil Code sections 3479 and 3480, the City argued the undisputed facts established Indian Peak's operation of the commercial antennae impaired the public's use and enjoyment of the surrounding properties.

As part of the evidence in support of its motion, the City submitted the declaration of E. Lee Afflerbach, a telecommunications engineer, whose company had been retained by the City's counsel to provide a technical review of the equipment authorized by CUP 230 and the equipment currently installed on Indian Peak's property and to opine whether the current equipment was the same as the equipment permitted by CUP 230, a modification of that equipment or an addition to it. In his declaration Afflerbach explained, "The five vertical antenna 'masts' on the property at the time CUP No. 230 was approved were vertical self-supporting antenna masts, each with four (4) radiating elements. The 'masts' did not have a separate

9

support structure. These antennas were designed to transmit and receive communication signals to and from hand-held and vehicle-mounted radios." According to Afflerbach, the original five antenna masts were still on the property's roof but had been moved to a slightly different position. "In addition to these self-supporting antenna masts, the property has eleven (11) additional antenna masts. Attached to these 11 additional masts are approximately fifteen (15) separate antennas. These antennas have different functionalities from the antennas affixed to the original five antenna masts. These antennas are designed to provide wireless internet service provider signals. In addition to these 11 antenna masts and 16 antennas, one (1) 4-foot-diameter microwave dish has also been installed on the property subsequent to the issuance of CUP No. 230. This dish is designed to create a communications link between two specific locations. None of these additional antennas is consistent with CUP No. 230, nor could the antennas be considered as modifications to the masts and antennas allowed by CUP No. 230."

Indian Peak filed an untimely opposition on June 21, 2019, which did not address the merits of the City's motion. Instead, after explaining that the attorney with responsibility for the case had unexpectedly left the law firm representing it, Indian Peak requested a stay of the proceedings pending resolution of Indian Peak's mandamus action or, alternatively, a continuance of the motion hearing for at least 50 days pursuant to Code of Civil

Procedure section 437c, subdivision (h),[3] because of the need for additional discovery to respond to the motion.[4]

Concurrently with its opposition memorandum Indian Peak filed an ex parte application pursuant to California Rules of Court, rule 3.1204 for an order staying the nuisance action or continuing the summary judgment hearing or, alternatively, for an order shortening time for the filing and hearing of a noticed motion seeking a stay or continuance. The City opposed the ex parte application. With respect to the requested stay of proceedings due to the pendency of Indian Peak's mandamus action, the City emphasized that two of its three nuisance causes of action did not depend on the revocation of CUP 230 and pointed out that Indian Peak had filed its mandamus petition and damage claims as an independent proceeding after the nuisance lawsuit was filed, rather than as a cross-complaint, and had made no effort to consolidate or relate the two actions. The trial court granted the application in part, continuing the summary judgment motion hearing eight weeks (to August 27, 2019).

On August 13, 2019 Indian Peak again applied ex parte to continue the summary judgment hearing, this time for an additional 45 days, to permit it to complete additional discovery necessary for it to prepare its opposition memorandum and "to determine and analyze what appears to be the adverse resolution

---

[3]    Statutory references are to this code unless otherwise stated.

[4]    The trial court had previously granted the parties' stipulated request to continue the hearing 21 days to allow Indian Peak to depose the City's director of community development.

11

of the Administrative Mandamus Hearing in the companion case pending between the parties."[5]  The application, not heard until after Indian Peak had filed its opposition to the summary judgment motion, was denied as moot.[6]

In its supplemental opposition papers filed August 13, 2019 Indian Peak argued the City had failed to present evidence showing any condition on its property could be considered injurious to public health or adversely affecting the public's enjoyment of life or property.  In addition, Indian Peak argued the City had not carried its burden of proof because it consented to the original installation of the antennae and authorized Indian Peak to submit a revision application concerning the additional antennae.  Indian Peak also requested a continuance of the hearing because further discovery was required and the mandamus action was still pending.[7]  Indian Peak filed objections

[5]     On August 9, 2019, two court days before Indian Peak's application, the superior court had issued its 10-page ruling denying Indian Peak's petition for writ of administrative mandamus.  Indian Peak noted in its application the ruling was neither a judgment nor a final appealable order (because Indian Peak's damage claims remained pending).

[6]     The application could not be heard on August 13, 2019 in Department 71, where the City's nuisance case was pending, and was submitted instead to Department 72.  Rather than rule on the merits, the court "on its own motion" continued the application to August 20, 2019 in Department 71—one week after Indian Peak's deadline for filing its opposition papers under section 437c, subdivision (b)(2).

[7]     Requesting a continuance of the summary judgment hearing date, not a stay of the proceedings, Indian Peak asserted, "There is no existing Order in the Mandamus Action and no Order will become final for another 60 days, at the very least.

12

to numerous portions of the declarations submitted by the City in support of its motion, including Afflerbach's expert declaration. The City filed a reply memorandum supporting its motion and arguing further delay of the hearing was unjustified and the additional discovery sought by Indian Peak was unnecessary.

At the hearing on August 28, 2019 the court granted Indian Peak's request to continue the matter, setting a new hearing date of October 29, 2019. The court found persuasive Indian Peak's argument it needed certain additional discovery relating to its contention the City's code enforcement had been arbitrary, but rejected other arguments it advanced.

Indian Peak submitted a second supplemental opposition and supporting papers on October 16, 2019, which included a request for a stay because the now-final judgment in the mandamus action had been appealed to this court. In these opposition papers Indian Peak argued the City had acted arbitrarily and contrary to its custom and practice in revoking CUP 230 and asserted its installation of federally protected, exempt antennae was privileged. The City filed a supplemental reply, which, in addition to responding to the substantive points in Indian Peak's papers, argued a stay of an action could not be sought in an opposition memorandum and noted this court had denied Indian Peak's petition for a writ of supersedeas to stay the City's order revoking CUP 230 and related enforcement actions pending determination of the mandamus appeal.

The summary judgment hearing was held on October 29, 2019. The court provided a tentative ruling, heard argument and took the matter under submission. Ten days later (November 8,

---

Therefore, the lack of finality of the Mandamus Action compels a continuance of this hearing."

13

2019) Indian Peak filed a motion to abate and stay all proceedings pending the appeal in the mandamus action. The scheduled hearing date for the motion was March 3, 2020. The following week Indian Peak applied without statutory notice to stay the proceedings or, in the alternative, to specially set its noticed motion to abate and stay for some time in December 2019. On the same day the court denied the application without prejudice because it did not "meet the standards under California Rules of Court."

4. *The Trial Court's Order Granting Summary Judgment*

The trial court granted the City's motion for summary judgment in a 17-page ruling issued November 20, 2019. Addressing at the outset Indian Peak's request for a stay of the City's nuisance action pending an appellate decision in Indian Peak's mandamus action, the court stated Indian Peak had failed to demonstrate how the first cause of action for operating commercial antennae in violation of CUP 230 was implicated by Indian Peak's challenge to the revocation of CUP 230 or how a decision on the second cause of action based on the evidence before the court and in a manner that did not conflict with the superior court's denial of Indian Peak's petition would be premature. Nonetheless, the court declined to rule on the request because, by making it in its supplemental opposition papers, rather than a noticed motion, Indian Peak had not given the parties an opportunity to fully brief the issues and present evidence in support of and opposition to the proposed stay.

Turning to the merits of the City's motion,[8] as to the first cause of action, installation and operation of commercial antennae in violation of the existing conditional use permit, the court ruled the City had provided evidence (which the court summarized) that Indian Peak had violated the conditions of CUP 230, constituting a nuisance per se, and that Indian Peak, with the burden shifted to it, had failed to demonstrate a triable issue of material fact as to the elements of the City's case or any defense to it.[9] The court explained the federal Telecommunications Act of 1996 (TCA) (Pub.L. No. 104-104 (Feb. 8, 1996) 110 Stat. 56), which Indian Peak asserted exempted its installation of antennae from local enforcement action, does not preclude a city from regulating personal wireless service facilities. Instead, the court continued, it prohibits regulation that unreasonably discriminates among providers of personal wireless services or has the effect of prohibiting the provision of those services, citing title 47 United States Code section 332(c)(7). Although Indian Peak claimed the City had unreasonably discriminated against it by determining it had violated CUP 230 and initiating enforcement proceedings based on a single complaint and without determining the function of its

---

[8] The court overruled all of the multiple evidentiary objections filed by Indian Peak to the City's evidence and the two objections to Indian Peak's evidence filed by the City.

[9] The court added that Kay, in his declaration in opposition to the motion, admitted he had "'added antenna to the subject property'" since issuance of CUP 230 and had "explain[ed] the purposes of the 'additional antenna added' as distinct from the original five antennae. [Citation.] Accordingly, there is no triable issue of material fact that antennae were added to the property in violation of the provisions of CUP 230."

15

additional antennae, the court found that none of the evidence submitted by Indian Peak created a triable issue of fact as to whether the City's actions were discriminatory. Because the City had determined Indian Peak's revision application was incomplete, the court reasoned, neither the failure of the City to consider that application nor the length of time that revision applications were pending from other providers without initiation of enforcement action by the City constituted evidence of discrimination. Noting the City's first notice of violation was given in August 2014, four years prior to the revocation hearing, the court found Indian Peak had presented no evidence it was not provided a reasonable opportunity to cure its violations of the conditions of CUP 230.

The trial court also found Indian Peak had submitted no evidence the City consented to the operation of the commercial antennae, either by virtue of the provisions of the original conditional use permit or through the exchange of correspondence relating to submission of a revision application. Similarly, the court found there was no evidence the City had failed to follow its own custom and practice with respect to following up on the incomplete revision application, but that, even if it had, that failure was irrelevant to whether Indian Peak's operation of antennae violated the provisions of CUP 230.[10] And the

_____

[10] Reviewing the evidence before it, the court explained the City had followed up with Indian Peak multiple times regarding its operation of additional antennae, the need for an amendment to CUP 230 and the information necessary for a revision application to be processed. There was no evidence the City's failure to contact Indian Peak after February 2018 when promised (and necessary) supplemental materials were not submitted violated its normal practice.

16

declaration submitted with Indian Peak's opposition indicating the provision of certain services would be adversely affected by the City's enforcement of its municipal code against Indian Peak did not demonstrate any discriminatory action by the City.[11]

As to the second cause of action, operation of commercial antennae without a valid conditional use permit, the City's evidence of the circumstances leading to the revocation of CUP 230 and Indian Peak's continued operation of the commercial antennae following that revocation and the City's notice to cease and desist constituted sufficient evidence of a nuisance per se. Again, the court found, Indian Peak failed to demonstrate a triable issue of fact regarding the elements of the cause of action or a defense to it. The same arguments and evidence regarding the City's purported discriminatory actions advanced in response to the first cause of action failed as to the second cause of action as well.

Finally, the court stated the City's third cause of action pursuant to Civil Code section 3479 was based on Indian Peak's

---

[11]  Elaborating on this point when considering it in connection with the City's second cause of action, the court explained, "A declaration from Defendant's customer asserting that revoking Defendant's CUP would cause a decrease in that customer's ability to provide coverage for its own customers does not address whether or how Plaintiff's revocation (or enforcement of its municipal code) was discriminatory or arbitrary. Absent any evidence that Plaintiff otherwise has not revoked CUPs held by entities that provide radio services that benefit the public notwithstanding the CUP holder's violation of the terms of the CUP, Defendant's evidence that revocation of Defendant's CUP may cause harm to its customer does not create a triable issue of material fact as to whether Plaintiff's revocation was discriminatory or arbitrary."

17

alleged violations of the City's municipal code, as asserted in the first two causes of action, and thus "appears to be duplicative" of those causes of action "in that, provided that Plaintiff established Defendant's conduct is in violation of one or both of the referenced code sections, and that Defendant has no defenses, it has established nuisance per se. As such, it appears that if Plaintiff prevails on either of the first two causes of action, it also prevails on the instant cause of action."

The court granted the City's motion for summary judgment and, "for appeal purposes only," separately granted the motion for summary adjudication as to the first, second and third causes of action. Judgment was entered on December 5, 2019. Indian Peak filed a timely notice of appeal on January 13, 2020.

5. *The Postjudgment Award of Attorney Fees*

Following entry of judgment the City on December 18, 2019 moved for an award of $114,220 in attorney fees as the prevailing party in the action pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(B); Government Code section 38773.5, subdivision (b); and RPV Municipal Code section 1.08.10, subdivision (D)(3).[12] Indian Peak opposed the

_____

[12]     Code of Civil Procedure section 1033.5, subdivision (a)(10)(B), allows an award of attorney fees as costs when authorized by statute. Government Code section 38773.5, subdivision (b), authorizes a city, by ordinance, to provide for the recovery of attorney fees by the prevailing party in any action to abate a nuisance. RPV Municipal Code section 1.08.010, subdivision (D)(3), in turn, provides, "The prevailing party in any proceeding associated with a violation of the code, the abatement of a public nuisance, or where a violation of any provision of the code has been declared a public nuisance, shall be entitled to recovery of attorneys' fees incurred in any such proceeding, where the city has

18

motion, contending as a practical matter the City was not yet the prevailing party because the related mandamus action had not yet been finally determined. It also argued the City had not prevailed on the dismissed fourth cause of action in the original complaint (for unfair competition) and challenged the reasonableness of the fees requested, pointing to particular instances of duplicative work by lawyers and attorney time for the mandamus action that was billed to this case. It sought a reduction of fees requested (if any were awarded) of $24,316.50.

The court granted the motion, modestly reducing the amount requested, and awarded the City $107,791.50 in attorney fees.

On March 16, 2020 Indian Peak filed a timely notice of appeal from the postjudgment order. At Indian Peak's request we consolidated its January 13, 2020 and March 16, 2020 appeals.

## DISCUSSION

1. *Standard of Review*

   a. *Summary judgment*

A plaintiff may move for summary judgment "if it is contended . . . that there is no defense to the action or proceeding" (§ 437c, subd. (a)) and for summary adjudication of a cause of action "if the plaintiff asserts there is 'no defense' to that cause of action." (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 241.) The plaintiff has carried his or her burden of showing there is no defense to a cause of action "if that party has proved each element to the cause of action entitling the

---

elected, at the initiation of that individual action or proceeding, to seek recovery of its own attorneys' fees."

19

party to judgment on the cause of action." (§ 473c, subd. (p)(1); see *Paramount Petroleum*, at pp. 239-240 ["a plaintiff can seek summary judgment by contending there is 'no defense' to the action, and it proves there is 'no defense' by establishing every element of its causes of action"].) The motion is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 473c, subd. (c).)

We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

b. *Attorney fees*

We review the legal basis for an award of attorney fees de novo and the amount of fees awarded for abuse of discretion. (See *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 ["'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo'"]; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 406 [same]; see also *Galan v. Wolfriver Holding Corp.* (2008) 80 Cal.App.4th 1124 [the trial court has broad discretion to determine which party is a prevailing party within the meaning of statutes authorizing attorney fees].)

2. *Governing Law*

    a. *Public nuisances (nuisances in fact)*

Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." Civil Code section 3480, in turn, provides, "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."[13]

"Unlike the private nuisance—tied to and designed to vindicate individual ownership interests in *land*—the 'common' or *public* nuisance emerged from distinctly different historical origins. The public nuisance doctrine is aimed at the protection and redress of *community* interests and, at least in theory, embodies a kind of collective ideal of civil life which the courts have vindicated by equitable remedies since the beginning of the 16th century." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103.) "Of course, not every interference with collective social interests constitutes a public nuisance. To qualify . . . the interference must be both *substantial* and *unreasonable*." (*Id.* at p. 1105.) "'It is substantial if it causes significant harm and unreasonable if its social utility is outweighed by the gravity of the harm inflicted.'" (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 112; accord, *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 305; see CACI

---

[13]    "Every nuisance not included in the definition of [Civil Code section 3480] is private." (Civ. Code, § 3481.)

No. 2020 [to establish a claim for public nuisance, the plaintiff must prove, among other elements, that the seriousness of the harm outweighs the social utility of the defendant's conduct].)

           b. *Nuisance per se*

"The concept of a nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. . . . [W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made and in this sense its mere existence is said to be a nuisance per se." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206-1207; accord, *Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1095 ["'"[n]uisances per se are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance"'"]; *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086 ["[a]n act or condition legislatively declared to be a public nuisance is '"a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury"'"].)

Government Code section 38771 provides, "By ordinance the city legislative body may declare what constitutes a nuisance." (See *City of Bakersfield v. Miller* (1966) 64 Cal.2d 93, 100 ["[c]ity legislative bodies are empowered by Government Code section 38771 to declare what constitutes a nuisance"]; *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 288-289.) The City in RPV Municipal Code section 1.08.010, subdivision (D)(1), has specified, "[A]ny condition caused or permitted to exist in violation of the provisions of this code shall be deemed a public nuisance and may be abated as such at law or

equity." As pertinent here, RPV Municipal Code section 17.76.020, subdivision (A), provides, "The installation and/or operation of a commercial antenna shall require the submittal and approval of a conditional use permit." Pursuant to RPV Municipal Code section 17.60.080, "[i]f any of the conditions to the use or development are not maintained, then the conditional use permit shall be null and void. Continued operation of a use requiring a conditional use permit after such conditional use permit expires or is found in noncompliance with any condition of a conditional use permit shall constitute a violation of this title."

> 3. *The Trial Court Did Not Abuse Its Discretion by Declining To Rule on Indian Peak's Procedurally Improper Request for a Stay*

Ignoring its own procedural failures, as well as the shortcomings of its argument on the merits, Indian Peak contends the trial court abused its discretion by not ruling on its request to stay the nuisance action pending final resolution of the mandamus proceedings, a request it included in its second supplemental opposition to the City's motion for summary judgment, filed October 16, 2019, rather than through a noticed motion. (Cf. *Bains v. Moores* (2009) 172 Cal.App.4th 445, 480 [trial court's denial of a motion for a stay reviewed for abuse of discretion].) In doing so, Indian Peak argues, the court improperly "elevate[d] form over substance."

The requirement of a properly noticed motion to seek affirmative relief, however, is not a mere technicality, but a fundamental procedural rule designed to protect the rights of the parties. As the trial court explained in declining to rule on the stay request, the inclusion of an affirmative request in opposition

23

papers filed less than two weeks before the continued summary judgment hearing deprived the City of a fair opportunity to respond with argument and evidence in opposition. (See *Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 930 [the requirements for a noticed motion in section 1010 are "intended to provide both the adverse party and the court with an adequate opportunity to address the issues presented"].) Requesting a stay in this belated and procedurally irregular manner was entirely unnecessary: Even putting aside that it was Indian Peak's decision not to file the mandamus action as a cross-complaint in the City's lawsuit or seek to have the two matters consolidated, Indian Peak could have moved for abatement or stay of the mandamus action as early as January 2019 when it demurred to the City's original nuisance complaint; yet it elected not to do so. When the trial court did not rule on Indian Peak's June 21, 2019 ex parte application for a stay of the case, granting instead its alternate request for a continuance of the hearing date to permit additional discovery, Indian Peak again chose not to file a noticed motion to obtain the relief it purportedly wanted. Then, when it filed its first supplemental opposition on August 13, 2019, Indian Peak asked the court to continue the hearing 60 days to permit the superior court's August 9, 2019 order denying the petition for writ of administrative mandamus to become final (and to permit additional discovery); it did not request a stay of the proceedings, either in its opposition papers or by separate motion. Having made these tactical decisions, Indian Peak cannot now complain of the consequences.

To be sure, section 437c, subdivision (h), as Indian Peak argues on appeal, authorizes the court to continue the summary

judgment hearing or "make any other order as may be just" if a party opposing the motion makes a sufficient showing in its opposition papers that "facts essential to justify opposition may exist but cannot, for reasons stated, be presented." Indian Peak's reliance on this section is doubly flawed. First, Indian Peak did not cite section 437c, subdivision (h), in its second supplemental opposition papers to support its request for a stay. (Indeed, in its original opposition papers, when it requested either a stay or a continuance of the hearing to conduct additional discovery, Indian Peak cited section 437c, subdivision (h), to support the latter request, but not the former.) Second, the stay was not sought because facts "may exist" that would support Indian Peak's opposition, the prerequisite for any order under section 437c, subdivision (h). Rather, Indian Peak simply hoped facts would develop in the future (a reversal on appeal) that would aid in its defense to the nuisance lawsuit. (Cf. *Bains v. Moores*, *supra*, 172 Cal.App.4th at pp. 485-486 [denying stay pending resolution of criminal proceedings to permit discovery from witnesses asserting their constitutional right not to incriminate themselves; plaintiffs "do not address the likelihood that the related criminal proceedings would be resolved within a reasonable period of time so as to allow plaintiffs to obtain such evidence"].)

In addition to being procedurally improper, Indian Peak's stay request was substantively deficient. As the trial court observed, Indian Peak failed to explain how the mandamus action challenging revocation of CUP 230 based on the City's purported failure to provide Indian Peak a fair hearing (by denying its newly retained counsel a continuance) and arbitrary action (revoking the conditional use permit while its revision

25

application was pending) could affect the first cause of action, which established a nuisance per se because Indian Peak had admittedly installed and operated commercial antennae not authorized by CUP 230. Whatever the appropriate exercise of discretion might have been in response to a properly noticed motion to stay the second cause of action, the trial court did not abuse its discretion when it declined to rule on Indian Peak's procedurally irregular request to stay the entire nuisance lawsuit.

4. *The City Established the Elements of Its First and Second Causes of Action but Not Its Third Cause of Action for Public Nuisance*

a. *The first and second causes of action*

The City presented evidence, including Afflerbach's expert declaration, establishing that Indian Peak had installed and operated commercial antennae in violation of the provisions of CUP 230 and the pertinent provisions of the RPV Municipal Code and continued to do so after CUP 230 was revoked in violation of other provisions of the Municipal Code. Indian Peak admitted it added antennae not authorized by CUP 230, yet nonetheless challenges the trial court's ruling its conduct established the affirmative elements of nuisance per se as alleged in the City's first and second causes of action. (Indian Peak also asserts defenses to the causes of action, which we address in the following section of our opinion.)

Indian Peak's argument is based on a fundamental misreading of the court of appeal's decision in *Clary v. City of Crescent City*, *supra*, 11 Cal.App.5th 274. As the *Clary* court explained, the Supreme Court in *City of Bakersfield v. Miller*, *supra*, 64 Cal.2d 93 held state laws more specific than Civil Code

26

section 3479 defining certain nuisances with greater particularity—there, a state housing regulation—do not define the limits of what may be declared a nuisance by municipal law under Government Code section 38771. However, the Supreme Court did not decide whether municipalities' power to declare nuisances applied only to specific conditions within the general areas of regulation enumerated in Civil Code section 3479 because the fire hazard addressed by the Bakersfield ordinance clearly fell within the definition of public nuisance in Civil Code section 3479. (*City of Bakersfield*, at p. 100.)

The court of appeal in *Clary* answered the question unresolved in *City of Bakersfield*, agreeing with *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 255-256 that local governments have the "authority to impose and enforce land use regulations, through a nuisance ordinance or otherwise, without regard to whether the prohibited use falls within the Civil Code definition of nuisance." (*Clary v. City of Crescent City*, *supra*, 11 Cal.App.5th at p. 289.)[14] Thus, far from supporting Indian Peak's argument a local government's land use ordinance cannot be the basis for a nuisance per se determination and the municipality must demonstrate not only that its ordinance was violated but also that the prohibited

[14] The *Clary* court also held the overgrown vegetation defined as a nuisance by the weed abatement ordinance at issue in the case fell within the statutory definition of public nuisance in Civil Code section 3479. (*Clary v. City of Crescent City*, *supra*, 11 Cal.App.5th at p. 289.) Indian Peak mistakenly asserts this alternate basis for the decision vitiates the court's holding that Civil Code section 3479 does not limit the scope of a local government's authority to enforce land use regulations through nuisance law.

27

conduct at issue satisfied the elements of the statutory definition of public nuisance in Civil Code section 3479, including balancing the harmful effect of the defendant's conduct against its social utility, *Clary* holds precisely to the contrary. Nothing more than the fact of the violation's existence is necessary to establish a nuisance per se. (See *Urgent Care Medical Services v. City of Pasadena*, *supra*, 21 Cal.App.5th at p. 1095.) The trial court properly concluded the City had established the elements of its first two causes of action for nuisance per se. (See *Clary*, at p. 289 ["We agree with the City that *Golden Gate Water Ski Club* is dispositive here. There can be no doubt that the City's police powers are broad enough to encompass aesthetic concerns"].)

Indian Peak's objections to Afflerbach's expert declaration that none of the antennae added by Indian Peak was "consistent with CUP No. 230, nor could the antennas be considered as modifications to the masts and antennas allowed by CUP No. 230," even if they had been well-taken,[15] do not compel a

---

[15] Indian Peak objected the terms "consistent" and "modification" were vague and ambiguous and Afflerbach's opinion was irrelevant because it failed to prove a violation of CUP 230. Indian Peak also objected to two other portions of Afflerbach's declaration as argumentative and irrelevant because they failed to prove a violation of the City's municipal code. The trial court overruled the objections. On appeal Indian Peak argues its objections should have been sustained because Afflerbach's declaration failed to provide information sufficient to establish public nuisance and thus were "irrelevant, improper expert opinion, and speculative."

Whether evaluated de novo or under an abuse of discretion standard of review (see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368), the trial court did not err in

28

different result.  It was undisputed, as Afflerbach established in portions of his declaration to which Indian Peak did not object and as Indian Peak admitted in its verified answer, that additional antennae not authorized by CUP 230 had been added to the antennae array on the roof of the residence on Indian Peak Road.  Although Kay, in his declaration in opposition to the City's motion, asserted that "[m]any of the additional antenna" functioned as "wireless internet service providers, providing internet to the home and allow[ing] for the operation of internet at the Subject Property" and thus, in his lay opinion, did not qualify as "commercial radio services" subject to the City's regulation, he did not contend all the additional antennae fell into that category or were otherwise permissible without an amendment or revision to CUP 230.

>    b. *The third cause of action*

In its motion for summary judgment the City argued its third cause of action for public nuisance in violation of Civil Code sections 3479 and 3480 was predicated on the doctrine of nuisance per se and Indian Peak's violation of the provisions of

---

admitting this evidence.  That an expert's opinion ultimately may not be persuasive on the issue for which it is proffered is not a proper ground for excluding his or her testimony.  (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 772 [The trial court's role as gatekeeper "to exclude 'clearly invalid and unreliable' expert opinion" is not a decision on its persuasiveness.  "The court must not weigh an opinion's probative value or substitute its own opinion for the expert's opinion.  Rather, the court must simply determine whether the matter relied on can provide a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture"].)

CUP 230 and its continued operation of commercial antennae on the property after CUP 230 had been revoked. The same 46 material facts were asserted in support of the third cause of action as for the first two causes of action. Thus, it is not altogether surprising the trial court observed the third cause of action was duplicative of the first two.

A trial court when ruling on a motion for summary judgment is required to determine whether undisputed facts entitle the moving party to judgment as a matter of law based on the issues as framed by the pleadings, not by the moving party's motion papers. (See generally *Turner v. Anheuser-Busch* (1994) 7 Cal.4th 1238, 1252; *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.) As discussed, the City's third cause of action for public nuisance, although incorporating by reference the preceding paragraphs of the pleading and averring that Indian Peak's actions violated the RPV Municipal Code (without specification of any particular section), alleged, "The installation and operation of commercial antennae on the Property by the Defendant are injurious to the public health, safety, and welfare and are so out of harmony with community standards and permissible land use to constitute a public nuisance and/or public nuisance per se." That is, as set forth in the operative pleading, the City alleged a public nuisance within the meaning of the statutory definition in Civil Code section 3479—something in addition to, not duplicative of, its first two causes of action. Yet its evidence in support of summary judgment failed to address the elements of this cause of action, in no way demonstrating, for example, how large a portion of the relevant community was affected by the antenna array (notwithstanding the City's explanation it had one complaint in

30

2014 and four individuals testified in support of revoking CUP 230 at the public hearing), let alone establishing as an undisputed fact that the harm caused by Indian Peak's continued operation of the antennae outweighed the social benefit of its conduct.

In short, the trial court erred in granting summary adjudication in favor of the City on the third cause of action and, as a consequence, in granting the motion for summary judgment.

> 5. *Indian Peak Failed To Demonstrate Triable Issues of Fact Regarding Its Defenses of Invalidity of the City's Municipal Code Provisions, Federal Preemption and Consent*

Indian Peak argues on appeal the City's zoning ordinances on which the nuisance causes of action are based violate due process and the City's enforcement action is barred by federal preemption and consent. None of these purported defenses has merit.

> a. *Due process*

Indian Peak did not argue in the trial court, as it does on appeal, that the City's ordinances violate due process by allowing arbitrary and irrational enforcement actions. The issue has been forfeited. (*Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322 ["[i]f a party fails to raise an issue or theory in the trial court, we may deem consideration of that issue or theory forfeited on appeal"]; *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264 ["[a]s a general rule, issues not raised in the trial court cannot be raised for the first time on appeal," internal quotation marks omitted]; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 894.) Moreover, to the extent Indian Peak's constitutional

31

argument is directed to the process leading to revocation of CUP 230 (for example, that the City acted arbitrarily in determining Indian Peak's revision application was incomplete or in purportedly deviating from its usual practice in providing opportunities for those in violation of conditional use permits to cure the violations), those matters were properly raised, if at all, in the mandamus proceeding.

Indian Peak's additional contention the ordinances and their enforcement in this case lacked any substantial relationship to a legitimate governmental purpose (that is, to the protection of the public health or safety or general welfare) is simply a repackaged version of its argument that a local ordinance cannot define a nuisance per se unless the prohibited conduct satisfies the statutory definition of a public nuisance. As discussed, this purported limitation on the local police power is contrary to well-established law.

b. *Federal preemption*

The TCA prohibits state or local regulation of the placement, construction and modification of personal wireless service facilities[16] by any state or local government that unreasonably discriminates among providers of functionally equivalent services and state or local regulations that have the effect of prohibiting the provision of personal wireless services. (47 U.S.C. § 332(c)(7)(B)(i).)[17] Indian Peak asserted in the trial

---

[16] "'[P]ersonal wireless services' means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services." (47 U.S.C. § 332(c)(7)(C)(i).)

[17] In a statement that comes perilously close to violating counsel's ethical obligation of candor to this court (Rules Prof. Conduct, rule 3.3(a)(1) [a lawyer shall not knowingly make a false

court that the City's conduct in declaring a violation of CUP 230 and revoking CUP 230 based on the installation of exempt-from-regulation antennae unreasonably discriminated against Indian Peak and had the effect of prohibiting Indian Peak's provision of personal wireless services.  On appeal, in addition to title 47 United States Code section 332(c)(7), Indian Peak cites for the first time in this case 47 Code of Federal Regulations part 1.4000, which prohibits restrictions that impair the installation, maintenance or operation of certain antennae used to receive or transmit fixed wireless signals, including direct-to-home satellite dishes that are less than one meter in diameter (the Over-the-Air-Reception Devices (OTARD) rule).  Indian Peak

statement of fact or law to a tribunal]), in its opening brief Indian Peak, citing title 47 United States Code section 332(c)(7)(B)(i), incorrectly asserts that federal law "expressly prohibits municipalities' regulation of 'the placement, construction and modification of personal wireless service facilities.'"  In fact, the limited restrictions on state and local regulation of personal wireless service facilities in that subdivision, summarized in the text, is part of a more general provision of the TCA concerning regulatory treatment of mobile services titled, "Preservation of local zoning authority," which states, "Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."  (47 U.S.C. § 332(c)(7)(A); see *Omnipoint Communications, Inc. v. City of Huntington Beach* (9th Cir. 2013) 738 F.3d 192, 195 ["§ 332(c)(7)(A) functions to preserve local land use authorities' legislative and adjudicative authority subject to certain substantive and procedural limitations"].)  That is, only certain specific types of regulations are prohibited—those that discriminate or would effectively preclude any provision of wireless services.

argues there are triable issues of material fact as to whether the additional antennae it installed are "exempt" under federal law and whether the City's ordinances and enforcement actions in preventing the installation and continued operation of those antennae are preempted by federal law.

Specifically, Indian Peak contends the City's enforcement action violated federal law (or that it demonstrated the existence of triable issues of fact as to whether the abatement proceedings violated federal law) because the City never attempted to determine, through consulting with experts or otherwise, whether any of the roof-mounted antennae installed by Indian Peak were "exempt" from regulation. As discussed, however, under title 47 United States Code section 332(c)(7)(A) & (B), antennae for personal wireless services are not exempt from regulation, as Indian Peak misleadingly asserts; rather, local regulation may not discriminate among providers of personal wireless services or generally prohibit the provision of those services. Indian Peak failed to present any evidence that would establish a violation of those limitations as a defense to the City's nuisance action or explain why, in the absence of any such evidence, it was the City's responsibility (and not Indian Peak's) to investigate the nature and function of the antennae maintained by Indian Peak in violation of CUP 230 and evaluate their status under federal law.

Indian Peak argued in the trial court that the City's actions were discriminatory, citing the City's treatment of an application for a conditional use permit by Marymount College and an application for modification of a conditional use permit by AT&T. The trial court found the evidence insufficient to create a triable

issue of fact,[18] and Indian Peak does not repeat that contention on appeal.  Similarly, although the City's abatement action may prevent Indian Peak from continuing to provide personal wireless services, at least until it complies with local zoning rules and obtains a new conditional use permit, Indian Peak presented no evidence the City's requirement that personal wireless service providers obtain conditional use permits before installing and maintaining commercial antennae on residential property effectively precluded the provision of personal wireless services within a significant portion of the City.  (See, e.g., *Omnipoint Holdings, Inc. v. City of Cranston* (1st Cir. 2009) 586 F.3d 38, 48 ["[w]hen a carrier claims an individual denial is an effective prohibition, virtually all circuits require courts to (1) find a 'significant gap' in coverage exists in an area and (2) consider whether alternatives to the carrier's proposed solution to that gap mean that there is no effective prohibition"]; see also *Green Mt. Realty Corp. v. Leonard* (1st Cir. 2012) 688 F.3d 40, 57 ["while 'an individual denial is not automatically a forbidden prohibition . . . [,] we [cannot] rule out the possibility that—based on language or circumstances—some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service'"].)

---

[18]     The trial court explained Indian Peak had submitted no evidence the Marymount application was comparable to Indian Peak's revision application, so that it was not possible to evaluate whether any purported differences in the review process were discriminatory.  Similarly, Indian Peak presented no evidence whether the AT&T application was ever completed, let alone ultimately granted, again precluding any evaluation whether Indian Peak was the victim of discriminatory or arbitrary action by the City.

The OTARD rule, like title 47 United States Code section 332, does not "exempt" covered antennae from all local laws or regulations; rather, it prohibits restrictions or requirements that "impair"—that is, that unreasonably delay or prevent or unreasonably increase the cost of[19]—the installation, maintenance or operation of antennae used to receive video programming services, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite on property within the exclusive use or control of the antenna user. (See 47 C.F.R. § 1.4000(a)(1).)  Indian Peak asserts its roof-mounted satellite dish antenna is exempt from any regulation under the OTARD rule and complains the trial court never mentioned this OTARD exemption.  But Indian Peak never cited the OTARD rule in the trial court or contended it provided a defense to the City's nuisance action.  Any reliance on that rule has been forfeited.  (*Cabatit v. Sunnova Energy Corp.*, *supra*, 60 Cal.App.5th at p. 322; *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker*, *supra*, 2 Cal.App.5th at p. 264.)[20]

---

[19]    The OTARD rule specifies "a law, regulation, or restriction impairs installation, maintenance, or use of an antenna if it: [¶] (i) Unreasonably delays or prevents installation, maintenance, or use; [¶] (ii) Unreasonably increases the cost of installation, maintenance, or use; or [¶] (iii) Precludes reception or transmission of an acceptable quality signal."  (47 C.F.R. § 1.4000(a)(3).)

[20]    Responding to the City's argument that Indian Peak had forfeited its OTARD arguments, Indian Peak insists in its reply brief that OTARD was raised in its second supplemental opposition memorandum.  It was not.  Indian Peak asserted its satellite dish antennae was exempt from regulation under

Even were the merits of its OTARD argument properly before this court, Indian Peak presented no evidence its satellite dish antenna came within the scope of the rule, which does not apply to antennae larger than one meter in diameter (47 C.F.R. § 1.4000(a)(1)(i)(B)), or that any of the other multiple antenna masts and antennae it had added to the roof of the property since 2005 were protected by the OTARD rule. Neither has it explained, much less cited authority for, the proposition essential to its argument that, when a collection of antennae includes both federally protected and unprotected items, requiring a conditional use permit for the entire array constitutes an unreasonable burden on the installation or maintenance of the protected antennae, which is all that the OTARD rule precludes.[21] In sum, Indian Peak failed to demonstrate a triable issue of fact existed as to its defense of federal preemption.

---

RPV Municipal Code section 17.76.020, subdivision (B)(2), but did not cite, let alone discuss, OTARD or 47 Code of Federal Regulations part 1.4000. Indian Peak did argue the roof-mounted satellite dish antenna was protected by 47 Code of Federal Regulations part 1.4000 in superior court in its papers supporting its request for a petition for writ of administrative mandamus.

[21]     Even if one or more of Indian Peak's antennae were protected by the OTARD rule, there appears no reason the installation and maintenance of other, unprotected antennae in violation of a conditional use permit could not properly be found to be a nuisance per se. The extent of the ensuing injunction or order of abatement might be affected, but not the underlying nuisance determination. Indian Peak does not argue on appeal the scope of the injunction against it should be narrowed.

c. *Consent*

Consent can be a defense to a claim of nuisance (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1138), although not necessarily to an action for the abatement of a public nuisance.  (*Id.* at p. 1139 ["we do not suggest that consent of an owner/lessor can impede the *abatement* of a public nuisance"]; accord, *Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, 44 Cal.App.4th at p. 1215; cf. *Hansen Bros. Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 564 ["the county lacks the power to waive or consent to violation of the zoning law"].)  In any event, Indian Peak's defense of consent fails as a factual matter.

Indian Peak's initial installation of its antenna array, although accomplished without prior consent, was ultimately approved with the issuance of CUP 230.  But Indian Peak violated the provisions of CUP 230 by installing and maintaining additional commercial antennae, and the permit was revoked. There was no longer consent for Indian Peak's continuing operation of its original antennae, let alone for the new ones it had added.

Indian Peak does not dispute those basic facts, but contends any violation of CUP 230 was cured, and its operation of additional commercial antennae was pursuant to the City's "consent," because it submitted a revision application in accordance with the City's July 26, 2016 letter.  Simply put, a pending application to revise the conditional use permit—asking for consent—is not consent.  Moreover, this court in the companion mandamus appeal, *Indian Peak Properties, LLC v. City of Rancho Palos Verdes*, *supra*, B303325), held, because Indian Peak failed to exhaust available administrative remedies

38

to challenge the City's actions in determining the revision application was incomplete, the decision not to process the application did not in any way undermine the propriety of the decision to revoke CUP 230.

### 6. *Reversal of the Judgment Requires Reversal of the Postjudgment Award of Attorney Fees*

Our reversal of the judgment in favor of the City necessarily requires reversal of the postjudgment award of attorney fees to it as the prevailing party in the action. (See *Friends of the Hastain Trail v. Coldwater Development LLC* (2016) 1 Cal.App.5th 1013, 1037; *Samples v. Brown* (2007) 146 Cal.App.4th 787, 811; see also *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 [after a judgment is reversed on appeal, the issue of trial costs is "'set at large'"]; *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [same].)

### DISPOSITION

The judgment and postjudgment order are reversed. The cause is remanded with directions to the trial court to enter a new order denying the City's motion for summary judgment, granting the motion for summary adjudication as to the first and second causes of action and denying the motion for summary adjudication as to the third cause of action. The parties are to bear their own costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.          IBARRA, J.[*]

---

[*] Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.